77 N.J. Super. 65 (1962)
185 A.2d 401
ROBERT VOORHEES, PETITIONER-RESPONDENT,
v.
GLENWAL CO., INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 29, 1962.
Decided November 8, 1962.
*66 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Isidor Kalisch, attorney for appellant.
Messrs. Mandel, Wysoker, Sherman & Glassner, attorneys for respondent (Mr. Jack Wysoker, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Respondent company appeals from an interlocutory order of the Workmen's Compensation Division, pursuant to leave granted.
The claim petition sought compensation for an injury suffered by petitioner while in respondent's employ on June 15, 1961, when he was struck on the left side of his head by a wrecking bar. Following the filing of an answer in which respondent company admitted a compensable incident, petitioner served and filed a notice of motion to compel it to provide the medical treatment necessary as a result of the accident, to pay for the treatment being provided, to pay compensation for a temporary disability, and for such other relief as might be deemed appropriate.
In due course the matter came on for hearing before the judge of compensation. Plaintiff testified at length in support of his claim, as did his treating physician, Dr. Smith, and his treating psychiatrist, Dr. Koroljow. There was admitted in evidence the records of three hospitalizations in 1961, all subsequent to the accident. Respondent, on its part, relied on the testimony of two employees and Dr. Flicker, a specialist in neurology and psychiatry. The judge of compensation concluded that petitioner had proved by a preponderance of the credible evidence that the uncontroverted compensable *67 accident of June 15, 1961 "contributed to, if it did not, in fact, cause the present serious neuropathologic condition" from which petitioner suffers. He further stated he was convinced that prior to the accident petitioner presented "a fertile field for such an injury; that is to say, that he was susceptible to serious neurological disability because of some, perhaps unknown, underlying systemic pathology," and that petitioner considerably aggravated his condition when, in October 1961, he fell and struck his head against a radiator. However, said the judge, this innocent aggravation was no bar to recovery.
We have thoroughly reviewed and evaluated the record and conclude that the judgment, both in fact and in the light of applicable law, is correct and should be affirmed. Russo v. U.S. Trucking Corp., 26 N.J. 430, 435 (1958); Ricciardi v. Marcalus Mfg. Co., 26 N.J. 445, 447 (1958).
Drs. Smith and Koroljow both testified that petitioner's present condition and need for treatment were causally related to the accident of June 15. Although respondent's Dr. Flicker testified on direct examination that there was no causal relation, his opinion was based upon an hypothetical question which only partially exposed the facts upon which a considered judgment could be based. However, when asked on cross-examination to take into consideration other relevant facts developed in the testimony and omitted in respondent counsel's hypothetical question, Dr. Flicker readily acknowledged the existence of a causal relation between the accident and petitioner's condition, his inability to work and the treatment for the condition. We find that petitioner fully discharged his burden of establishing his case by a fair preponderance of the credible evidence. He proved with reasonable probability that the accident either caused or proximately contributed to the condition of which he complains.
It is, of course, well established that an employer takes an employee as he is. If petitioner had any neuropsychiatric condition before the June 15 accident, it was relatively minor *68 and certainly not disabling. His present complaints and inability to work date from the accident.
Petitioner has not worked for respondent since September 18, 1961. The order under appeal directed that respondent pay temporary compensation from September 19, 1961 until petitioner had reached the maximum benefit from the medical treatment to be provided by the employer. See Monaco v. Albert Maund, Inc. 17 N.J. Super. 425, 430 (App. Div. 1952). However, $1,013 of the temporary disability payments was to be applied to reimbursing the State for temporary disability benefits paid the petitioner. See N.J.S.A. 34:15-57.1. Respondent was also to provide for neuropsychiatric treatment as recommended by Dr. Smith and Dr. Flicker, to commence immediately. It was to reimburse the Prudential Insurance Company for payments it had made for medical and surgical benefits, in the amount of $706.09. See N.J.S.A. 34:15-15.1. Respondent was also directed to pay the reasonable hospital and medical bills of Dr. Smith and Koroljow, as well as of the Middlesex General Hospital, where petitioner had been hospitalized. See R.S. 34:15-15.
Respondent insists that the order was beyond the power of the compensation judge to enter, and contrary to the intent and purpose of the Workmen's Compensation Act. No authority is cited, and we know of none which supports respondent's position. Its answer admitted a compensable accident. Temporary disability was determined after a full and fair hearing. The Workmen's Compensation Act not only contemplates but expressly provides for temporary disability payments. N.J.S.A. 34:15-12, 34:15-38. For respondent to translate this obligation and the obligation of furnishing necessary medical and hospital service (R.S. 34:15-15) as a requirement that respondent "make temporary disability payments and * * * provide medical care in futuro for some indefinite time," is to distort the provisions of the order under appeal as well as the statute itself. The order directed that the future course of treatment be that recommended by both petitioner's treating *69 physician, Dr. Smith, and respondent's specialist, Dr. Flicker. This gives respondent ample opportunity to keep abreast of developments.
The situation here is one that confronts every employer when an employee is injured, unable to work and requires medical attention. In most cases the employer, without waiting for the employee to secure a court order, itself assumes the obligation of paying temporary disability and providing medical care for some indefinite time, until its treating doctor feels that the point of maximum recovery has been attained. This is no different from the situation presented here, except for the fact that petitioner's condition is evidently deep-rooted and complex, and apparently not too easy of correction.
The judge of compensation dealt with the case exactly as it stood at the time it was presented to him. Sa v. H.L. Harrison & Son, Inc., 38 N.J. 203 (1962), cited by respondent, involved an entirely different type of situation and is not authority for the contention that the order was not a proper one under the statute.
The fact that the issue of permanent disability (should petitioner not entirely or at all respond to treatment) remains to be litigated later, presents nothing unusual. Such is always the case when, for example, a petitioner is compelled to secure an order of the type here entered when his employer refuses to provide medical attention or pay temporary compensation as required by the Workmen's Compensation Act (R.S. 34:15-15). Nowhere does the statute state that a petitioner must wait until his permanent disability is fixed and can be evaluated before he may apply for relief where, as here, his employer admits he has suffered a compensable accident.
Affirmed.