CHARLES BOND, PETITIONER-RESPONDENT AND LIMITED APPELLANT, v. ROSE RIBBON & CARBON MFG. CO., RESPONDENT-APPELLANT.

Argued December 16, 1963—Decided May 4, 1964.

*Mr. Isidor Kalisch* argued the cause for respondent-appellant, by its insurance carrier, New Jersey Manufacturers Casualty Insurance Company.

*Mr. Robert J. S. McCoid* argued the cause for respondent, by its insurance carrier, Insurance Company of North America (*Messrs. Schneider & Morgan,* attorneys; *Mr. Henry G. Morgan,* of counsel; *Mr. Stanley J. Perwin,* on the brief).

*Mr. Seymour B. Jacobs* argued the cause for petitioner-respondent and limited appellant (*Messrs. Balk & Jacobs,* attorneys; *Mr. Seymour B. Jacobs,* of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. We granted the petition of Rose Ribbon & Carbon Mfg. Co., by its insurance carrier, New Jersey Manufacturers Casualty Insurance Company, to appeal from the judgment of the Appellate Division. 40 *N. J.* 499.

We affirm generally for the reasons stated by the Appellate Division, *Bond v. Rose Ribbon & Carbon Mfg. Co.,* 78 *N. J. Super.* 505 (*App. Div.* 1963), subject to the following:

The evidence warrants the conclusion that the activation of Bond's tubercular condition occurred at some undisclosed time prior to March 24, 1958, the date upon which New Jersey Manufacturers Casualty Insurance Company (Manufacturers) succeeded Insurance Company of North America (North America) as carrier. But it is also evident that Bond was then unaware of the existence of that disease, and that there was no visible manifestation thereof.

It is undisputed, as testified by Doctor Lieb, that:

"Anyone with active tuberculosis has a temporary disability of 100 per cent of total on the basis that they should not be working and should be under treatment."

Theoretically, then, a 100% temporary disability, antedated March 24, 1958, although unknown to Bond and not cognizable by a layman. In spite of that disability he was not physically incapacitated from performing the duties of his employment but, to the contrary, continued to function as an employee.

Where, as here, an employee is exposed to work conditions which activate or cause a progressive occupational disease, and the existence of such disease remains undisclosed and unknown over a period of time, it is impossible upon ultimate revelation of its existence by medical examination, work incapacity, or manifest loss of physical function, to pinpoint in retrospect, the triggering date of such activation or inception. It is also impossible to reconstruct the daily rate of progress of the disease from its genesis to discovery through one of the afore-mentioned means, where such employee continues to be exposed to work conditions which aggravate the existing disease in unascertainable stages. It follows that where the employment under such work conditions was under the aegis of successive employers or insurance carriers, from initial infection or activation to discovery or manifestation, it is impossible to accurately determine the inception and the rate of progress of the disease during such respective periods of employment or insurance coverage. Therefore, any apportionment of compensation liability between the successive employments or insurance coverages, must of necessity be speculative and arbitrary. To avoid the morass into which litigation would be pitched were apportionment required, and to eliminate the recognized unsatisfactory nature of any such attempted ascertainment, we conceive that the most workable rule and that most consistent with the philosophy and public policy of the Workmen's Compensation Act is to hold liable that employer or carrier during whose employment or coverage the disease was disclosed as above noted, *i. e.*, by medical examination, work incapacity, or manifest loss of physical function. Although this test is admittedly arbitrary and may on occasion cause some apparently unfair results, over the years it should result in an equitable balancing of liability. Under the circumstances we conceive it to be the fairest and most workable thesis.

Two other matters require attention.

We became aware during oral argument that the petitioner has to date received no compensation payments. Although

this issue is not formally before us, we feel constrained to express our views of such a course of conduct.

Petitioner filed his original petition for compensation on November 19, 1958 and an amended petition in March 1959, both of which disclosed that Manufacturers was the insurance carrier. Manufacturers filed an answer which amounted to a general denial. On June 16, 1960, at the instance of Manufacturers, North America was joined as a respondent. In October 1961 judgment was entered for plaintiff in the Division against North America. Neither insurance carrier disputes petitioner's entitlement to compensation from one or the other of them. North America appealed to the County Court from said judgment on November 17, 1961. Petitioner took a limited appeal to preserve his rights in the event it was decided that Manufacturers was liable, jointly, severally or in the alternative with North America. The sole question on the successive appeals to the County Court, Appellate Division and this court, was which of said carriers was liable.

■■ The record discloses no attempt to stay the judgment of the Division upon appeal to the County Court. See *R. R.* 5:2–5(a). Absent such a stay, North America, the appellant carrier, should have made such payments. We conceive the terms of *R. R.* 5:2–5(a) to be broad enough to authorize the County Court to require continued payment by either or both contesting insurance carriers with provision for reimbursement depending upon the ultimate disposition of the matter.

■■ We appreciate that the statutes would have allowed petitioner to take affirmative steps to enforce both his judgment in the Division, *N. J. S. A.* 34:15–58, and in the County Court, *N. J. S. A.* 34:15–66.1. However, where the sole dispute is between two insurance carriers, the petitioner should not be put to the expense and inconvenience of taking affirmative action to recover payments admittedly due from one of the appellants. So here the failure to pay the petitioner any compensation for approximately 2½ years after his award in

the Division is inexcusable, and he is entitled to interest upon the past-due payments.

A portion of costs and the counsel fees allowed to petitioner's counsel on appeal in the County Court was directed to be paid by petitioner, and no costs were allowed petitioner on appeal to the Appellate Division. Under all of the facts here present we conceive that costs and counsel fees should be allowed petitioner on the appeals in the County Court, Appellate Division and this court, assessed against Manufacturers. See *Kasiski v. International Paper Co.*, 33 *N. J.* 473 (1960), *N. J. S. A.* 34:15–66, *R. R.* 5:2–5(f).

Affirmed, subject as aforesaid as to costs and counsel fees.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.