ANTHONY C. GIAGNACOVO, PETITIONER-RESPONDENT, v. BEGGS BROTHERS, RESPONDENT-APPELLANT.

Argued October 9, 1973—Decided November 13, 1973.

*Mr. Joseph T. Ryan* argued the cause for appellants Begg Brothers (*Messrs. Lamb, Blake, Hutchinson, Thompson & Chappell,* attorneys).

*Mr. Arthur M. Lizza* argued the cause for respondent John Sgro (*Messrs. Carpenter, Bennett & Morrissey,* attorneys).

*Mr. Andrew Lawrie* argued the cause for respondent Pollotta & Somers (*Messrs. Lawrie, Jennings & Buggeln,* attorneys).

*Mr. Gerald M. Zashin* argued the cause for respondent Antonucci Brothers Construction Co., Inc.

*Mr. Arthur F. Mead* argued the cause for respondent Patrick A. DiZenzo.

No appearance for petitioner-respondent.

PER CURIAM. The question here raised is whether the last of five successive employers of the petitioner workman is responsible in workmen's compensation, under the evidence adduced, for an occupational disability developed by the petitioner during the course of his work for such employers. The Judge of Compensation adjudicated liability for a partial permanent disability to the extent of 5% of the statutory right hand against the first employer, John Sgro ("Sgro"), with whom petitioner was employed when he first received medical treatment for the disability, and for 45% of the hand against the last employer, Beggs Brothers ("Beggs"),

where he was working when he was forced to stop work because of the pain. He found no liability on the part of the three intervening employers, notwithstanding that he found injurious exposure with all of them by petitioner, because he could not "find any way of measuring the disability" accruing in such employments. Soon after cessation of the Beggs employment in January 1970, petitioner sustained surgery involving a fusion of the right wrist and resulting in a substantial impairment of the functional usefulness of the hand.

No appeal was taken by Sgro, but on Beggs' appeal the Appellate Division affirmed on the basis of *Bond v. Rose Ribbon & Carbon Mfg. Co.*, 42 *N. J.* 308 (1964), and *Ort v. Taylor-Wharton Co.*, 47 *N. J.* 198 (1966). We granted certification. 63 *N. J.* 501 (1973). No issue as to the amount of the award is implicated.

At the outset it is noted that Sgro is not complaining of the award against him and thus the correctness of that action is not before us. Nor did the compensation judge purport to apply any general rule of apportionment of liability among successive employers with whom there is injurious exposure. We are therefore not called upon to reconsider our decision in *Bond, supra,* not to adopt any such apportionment approach to the problem of the successive-employment occupational disease situation. (42 *N. J.* at 311). We have here only to determine whether the imposition of liability against Beggs is correct within the *Bond* approach and upon the record and the fact findings of the compensation judge. We conclude it is, and affirm.

Petitioner had been a bricklayer for 20 years. This involved working with bricks and heavy blocks, and, when handling blocks, the cutting or splitting of them, sometimes with a hammer. Petitioner suffered from chronic arthritis of the hand, the hospital records indicating "complaints referable to the right wrist for five or six years prior to [the 1970] hospitalization". Petitioner testified that when working with Sgro (employment period — March 19, 1968 to

April 30, 1969) he had occasion at unspecified times to drive stakes into the ground and "used to get [a] shock in the wrist", and his wrist hurt. When working for all the employers the wrist "constantly aggravated, constantly bothering me". He wore a brace for relief, prescribed by his treating doctor. When asked by the judge as to whether the hand was "any different" while petitioner was working for Beggs (employment period — 13 days in December 1969 and one in January 1970), he answered, "* * * it was getting progressively worse * * *," and he indicated this was so "all during this time". We interpret this to mean the whole period of the collective employments.

Petitioner was treated by Dr. Coyle on April 17, 1969 and was X-rayed by the latter May 8, 1969. Dr. Coyle told him then that he would need surgery, but it was up to the petitioner as to when. "It all depended on how bad I could stand the pain". There was no testimony by Dr. Coyle at the hearing, but there is a "surgeon's report" by him in evidence containing a pre-operative diagnosis of "traumatic arthritis to right wrist". Nothing in the record indicates precisely what the May 8, 1969 X-ray showed.

The compensation judge found that petitioner's chronic arthritis was aggravated by strain in the use of the hand in the successive employments; that the operation was necessary for relief of the ensuing pain and attributable at least in part to the employments; that the resulting permanent disability was 50% of the hand; that Dr. Barnes' (employer's examiner) report "seems to indicate that from the report of Doctor Coyle at that time [of the earlier treatment by Dr. Coyle] that there would be some disability"; that petitioner was able to work although with pain thereafter until January 1970, and that the condition had not reached "such a stage of acuteness that it needed to be treated or some medical attention to relieve it" until petitioner was with the last employer. The contribution to the condition by the interim employers not being measurable, the liability for the

disability would, as noted above, be assessed 5% against Sgro, where petitioner was working at the time of Dr. Coyle's treatment, and 45% against Beggs, where the work "brought [the hand] to the point where it needed to be operated on".

The position of appellant is basically that (1) the condition was medically revealed prior to petitioner's employment with Beggs, specifically during the Sgro employment, and therefore the entire disability and consequent liability, under *Bond, supra,* was attributable to Sgro or others; and (2) there was no medical proof that the condition was caused, contributed to or aggravated by the exposure with Beggs.

The *per curiam* opinion of this court in Bond constituted (1) a succinct summary of the reasons for not employing the apportionment approach in allocating liability in this kind of occupational disease case; and (2) an affirmance, "generally for the reasons stated" in the Appellate Division opinion (78 *N. J. Super.* 505), of the judgment of that court in finding that a later insurer of the employer had not demonstrated that petitioner's occupational tuberculosis had reached a compensable stage during the coverage of a prior insurer. The criteria of employer liability in this kind of case were stated in the *Bond per curiam* as follows (42 *N. J.* at 311):

"* * * to hold liable that employer or carrier during whose employment or coverage the disease was *disclosed* as above noted, *i. e.,* by medical examination, work incapacity, or manifest loss of physical function." (Emphasis added)

■ However, this thumb-nail formulation is better understood and applied by reference to the discussion of the development of the stated criteria in the Appellate Division decisions in the *Bond* case itself (78 *N. J. Super.* 514–518) and in *Bucuk v. Edward A. Zusi Brass Foundry,* 49 *N. J. Super.* 187, 202–207 (App. Div. 1958), certif. den. 27 *N. J.* 398 (1958), and *Brooks v. Bethlehem Steel Co.,* 66 *N. J. Super.* 135, 144–146 (App. Div. 1961), certif. den. 36 *N. J.* 29 (1961). An examination of these cases will show that two of the *Bond* criteria, *i. e.,* (a) disclosure by medical

examination, and (b) disclosure by manifest loss of physical function, represent in substance two methods of revelation of a specific degree of physiological pathology — one which is fixed, arrested and definitely measurable. See *Brooks, supra,* 66 *N. J. Super.* at 146; *Bond, supra* (78 *N. J. Super.* at 516, 518); *cf. Ort v. Taylor-Wharton Co., supra,* 47 *N. J.* at 204. Medical examination and diagnosis are ordinarily required for its ascertainment when the condition is internal, as in *Brooks,* but ordinarily not when it is external, such as a perforated septum, *Calabria v. Liberty Mutual Insurance Co.,* 4 *N. J.* 64 (1950), or a "Dupuytrens Contracture",[1] *Duncan v. T. I. McCormack Trucking Co.,* 43 *N. J. Super.* 352 (App. Div. 1956), such being conditions "cognizable even by a layman", *Bucuk v. Edward A. Zusi Brass Foundry, supra,* 49 *N. J. Super.* at 206[2]

The evidence here that on May 8, 1969, when petitioner was working for respondent Pollotta & Somers (employment exposure — April 16, 1969, and May 7 to May 28, 1969), Dr. Coyle took an X-ray of the hand and told petitioner he would require an operation at such time as he could no longer stand the pain of working does not in our view establish the requisite fixed, arrested and definitely measurable condition that fastens liability on the employer as of the time of revelation of such a condition. Compare the fact situation in *Bond, supra,* where it was similarly concluded that the requisite condition had not been manifested as of the critical date there involved, resulting in imposition of the entire liability on the last insurer.

We find, finally, that there was substantial credible evidence to support the conclusion of the judge in compensation that exposure of petitioner during the Beggs period of employment, though short, contributed to the development

---

[1] A claw-like condition of the hands.

[2] The latter category of conditions was labelled in *Calabria, supra,* as a "definite fault akin to a traumatic injury". 4 *N. J.* at 71.

of the disease and to the necessity for the operation and the resultant disability adjudged in the Division of Compensation. *Cf. Bond, supra* (78 *N. J. Super.* at 518).

A question of limitations, argued by appellant in the Appellate Division, has been considered by us and found without merit.

Judgment affirmed.

*For affirmance* — Justices JACOBS, SULLIVAN, PASHMAN and CLIFFORD and Judge CONFORD—5.

*For reversal* — None.