176 N.J. Super. 329 (1980)
423 A.2d 316
JOHN CUSATIS, PETITIONER-RESPONDENT,
v.
AMERICAN CYANAMID, THROUGH ITS INSURER, AMERICAN HOME ASSURANCE COMPANY, RESPONDENT-APPELLANT AND CROSS-RESPONDENT, AND AMERICAN CYANAMID, THROUGH ITS INSURER, COMMERCIAL UNION ASSURANCE COMPANIES, RESPONDENT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 27, 1980.
Decided November 25, 1980.
*331 Before Judges SEIDMAN, ANTELL and LANE.
J. Raymond Dietrich, for respondent-appellant, by its insurance carrier, American Home Assurance Company (Franklin L. Flacks, of counsel and on the brief).
William K. Miller, for respondent and cross-appellant, by its insurance carrier, Commercial Union Assurance Companies.
Parsonnet, Duggan & Pykon, for petitioner-respondent (Jacobson & Silverman, of counsel).
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
Petitioner was employed for many years by American Cyanamid Company. During that time he was exposed to carcinogenic chemicals. He developed cancer of the bladder which, according to the medical proofs and not disputed on this appeal, was caused by the exposure. The condition worsened from February 1975, when the disease was first discovered by medical *332 examination, until he became totally disabled in April 1978. There is no issue, of course, of the employer's responsibility to accord petitioner his full measure of workers' compensation benefits. It does not matter whether the ultimate total disability was the normal progression of the cancer, an aggravation or acceleration of the condition resulting from petitioner's continued exposure to the carcinogenic material, or a combination of both. The employer is concededly liable for the end result. The sole issue on this appeal is the extent to which two workers' compensation carriers are obligated to pay the award of temporary and permanent disability benefits to the petitioner, made after a hearing in the Division of Workers' Compensation. Dependency benefits are not involved.
Commercial Union Assurance Companies (Commercial Union) was on the risk in February 1975 and remained so until the end of that year. American Home Insurance Company (American Home) assumed the risk on January 1, 1976, and was the carrier when petitioner became totally disabled. There is no contention that any carrier prior to Commercial Union is liable for the claim in whole or in part.
The judge of compensation found that the cancer was diagnosed on February 13, 1975. He took note of an order made by another compensation judge requiring Commercial Union to pay temporary disability benefits for stated periods up to October 26, 1977, and also certain medical bills. The order further provided for credit to be given Commercial Union in the event liability was ultimately placed on another carrier. The judge of compensation here also found that petitioner returned to work on October 26, 1977, and continued to be exposed to the chemicals until April 10, 1978, after which, for all practical purposes, petitioner never worked again. It appears that a Dr. Bloom, who examined petitioner in October 1976, evaluated his disability at 60% of partial total. His reexamination in March 1978 revealed an increase in disability to 75% of partial total. In June 1978 he found petitioner to be totally disabled.
*333 While there was some conflict in the medical proofs with respect to whether the continued exposure aggravated or accelerated the cancer, one medical expert contending that it did not, the judge of compensation accepted as more credible the contrary view expressed by practically every other medical expert in the case.
On the crucial issue of apportionment of liability between the two carriers, the judge of compensation said:
I believe that we have a definite point in time here. We have an evaluation of petitioner's disability, which satisfies the requirements as recited in the famous case of Bond v. Rose Ribbon and Carbon Mfg. Co., 42 N.J. 308. It's a 1964 decision.
By that case, we find that an apportionment of an occupational disease may be made when the disease was disclosed by the medical examinations of the man's working capacity or manifestation [sic] loss of physical function. In the instant case, we have a medical examination and a definite evaluation of the extent of the disability made at the time, and I am referring to Dr. Bloom. There is nothing that I see before me that would permit this Court-again following the Bond rule-to apportion any part of the disability prior to that opinion of the disability by Dr. Bloom.
Consequently, I am constrained, under the cases, including Ansede v. National Gypsum Company, 73 N.J. 444, 1977, to dismiss a claim petition, insofar as it concerns American Cyanamid Company while it was self-insured, or for the period when it was insured by the New Jersey Manufacturers Insurance Company and again during the period when the Insurance Company of North America was on the risk.
I feel that there is an apportionment here in this case between the last two carriers; namely, the American Home Insurance Company and Commercial Union.
Without further amplification or explanation, the judge of compensation then proceeded to enter judgment apportioning the award of benefits between Commercial Union and American Home in the following manner:
Commercial Union was assessed the payment of temporary disability benefits for certain periods totalling 18 5/7 weeks between February 13, 1975, and November 24, 1975; and was to be reimbursed by the other carrier for payments made for other periods and for specified medical and related bills. It was also ordered to pay the award of 60% partial permanent disability; i.e., 330 weeks at $40 a week, commencing with November 25, 1975.
*334 The award against American Home consisted of the payment of temporary disability benefits for a number of periods between March 12, 1976, and April 10, 1978, and also certain specified hospital and medical bills.
As for total permanent disability, American Home was directed to pay, commencing April 14, 1978, $88 a week, the difference between the $128 rate payable for total disability and the $40 rate payable for partial permanent disability, until the expiration of the award payable by Commercial Union. Thereafter, American Home would continue payments at the rate of $128 a week until the total award assessed against it was paid in full.
American Home contends on appeal that the judge of compensation erred in apportioning the award against it. It argues, essentially, that petitioner's total disability was the natural progression of the disease, so that Commercial Union, being on the risk when the cancer was discovered, must bear full and sole responsibility for the entire disability. Commercial Union argues on its cross-appeal that since the disease did not become fixed, arrested and measurable until the appraisal of total permanent disability in 1978, American Home is solely liable. Alternatively, Commercial Union takes the position that the proofs supported the finding of the judge of compensation that petitioner's continued exposure aggravated the disease; consequently, American Home should be responsible for at least that portion of the disability.
Initially, we are satisfied that the finding of the judge of compensation with respect to the aggravation of the cancer as the result of petitioner's continued exposure to the deleterious materials could reasonably have been reached on sufficient credible evidence in the record, considering the proofs as a whole. Close v. Kordulak Bros., 44 N.J. 589 (1965); DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 89-90 (App.Div. 1973), aff'd o.b. 62 N.J. 581 (1973). But we cannot glean from the oral opinion of the judge of compensation any rational basis for his conclusions with respect to the apportionment of liability between the two carriers.
*335 On this issue the opinion is clearly lacking in findings of fact as required by the decisional law of this State. See Katz v. Howell Tp., 67 N.J. 51, 63 (1975); Congleton v. Pura-Tex Stone Corp., 53 N.J. Super. 282, 285-288 (App.Div. 1958). As we said in Reiser v. Simon, 63 N.J. Super. 297 (App.Div. 1960):
... A trial judge must be explicit in his recital of the evidence and in his factual findings and must so correlate them to his legal conclusions that the .. . judgment entered manifestly appears to be undergirded by legal proof of substantial probative value and by specific factual findings thereon. [at 300-301]
There were critical issues to be addressed, with appropriate factfinding as to each, before a determination could be made of which carrier was liable for petitioner's disability or, if both were responsible, how the liability should be apportioned. This was not done here. The first issue to be resolved was which carrier would be held liable for the disability, as distinguished from any work-connected aggravation or acceleration of the disease. It is difficult to comprehend the judge's reasoning in the matter. He found in Dr. Bloom's testimony an evaluation of petitioner's disability which "satisfies the requirements ... of Bond v. Rose Ribbon and Carbon Mfg. Co., 42 N.J. 308." But the evaluation of partial permanent disability, 60% of total, was made by Dr. Bloom in October 1976. American Home was then on the risk. Furthermore, the award for that disability commenced on November 25, 1975, when Commercial Union was the carrier. Why that date was chosen is not disclosed in the record. And, as noted previously, the disease was first discovered by medical examination on February 15, 1975.
The opinion of the judge of compensation lacks a clear and intelligible explanation of how he applied Bond v. Rose Ribbon and Carbon Mfg. Co., 42 N.J. 308 (1964). That case established the rule that, where an employee is exposed to work conditions which activate or cause a progressive occupational disease, and the existence of such disease remains undisclosed and unknown over a period of time,
... the most workable rule and that most consistent with the philosophy and public policy of the Workmen's Compensation Act is to hold liable that employer *336 or carrier during whose employment or coverage the disease was disclosed as above noted, i.e. by medical examination, work incapacity, or manifest loss of physical function. [Id. at 311.]
Bond was amplified and clarified in Giagnacovo v. Beggs Bros., 64 N.J. 32 (1973):
The per curiam opinion of this court in Bond constituted (1) a succinct summary of the reasons for not employing the apportionment approach in allocating liability in this kind of occupational disease case; and (2) an affirmance, "generally for the reasons stated" in the Appellate Division opinion (78 N.J. Super. 505), of the judgment of that court in finding that a later insurer of the employer had not demonstrated that petitioner's occupational tuberculosis had reached a compensable stage during the coverage of a prior insurer. The criteria of employer liability in this kind of case were stated in the Bond per curiam as follows (42 N.J. at 311):
"* * * to hold liable that employer or carrier during whose employment or coverage the disease was disclosed as above noted, i.e., by medical examination, work incapacity, or manifest loss of physical function." (Emphasis added)
However, this thumb-nail formulation is better understood and applied by reference to the discussion of the development of the stated criteria in the Appellate Division decisions in the Bond case itself (78 N.J. Super. 514-518) and in Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187, 202-207 (App.Div. 1958), certif. den. 27 N.J. 398 (1958), and Brooks v. Bethlehem Steel Co., 66 N.J. Super. 135, 144-146 (App.Div. 1961), certif. den. 36 N.J. 29 (1961). An examination of these cases will show that two of the Bond criteria, i.e., (a) disclosure by medical examination, and (b) disclosure by manifest loss of physical function, represent in substance two methods of revelation of a specific degree of physiological pathology-one which is fixed, arrested and definitely measurable. See Brooks, supra, 66 N.J. Super. at 146; Bond, supra (78 N.J. Super. at 516, 518); cf. Ort v. Taylor-Wharton Co., supra, 47 N.J. at 204. Medical examination and diagnosis are ordinarily required for its ascertainment when the condition is internal, as in Brooks, but ordinarily not when it is external, such as a perforated septum, Calabria v. Liberty Mutual Insurance Co., 4 N.J. 64 (1950), or a "Dupuytrens Contracture", Duncan v. T.I. McCormack Trucking Co., 43 N.J. Super. 352 (App.Div. 1956), such being conditions "cognizable even by a layman", Bucuk v. Edward A. Zusi Brass Foundry, supra, 49 N.J. Super. at 206 [64 N.J. at 37-38.]
In short, the deficiency in the compensation judge's opinion is his omission to articulate, with requisite factfinding, when petitioner's occupational disease first reached a compensable stage, applying the principles and criteria expressed in Bond and Giagnacovo. See also, in this regard, Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J. Super. 187 (App.Div. 1958), certif. den. 27 N.J. 398 (1958), in which we said:

*337 ... [W]hen the disease is of a nature which is gradually progressive and does not manifest the kind of tangible bodily injury or impairment which is specifically demonstrable, and cognizable even by a layman, but takes its toll in a general overall condition of malaise eventually forcing discontinuance of work at the injurious occupation, the inception of compensable status is when such discontinuance at work begins. Whether the cessation of work must be permanent is a question not susceptible of pat formulaic generalization. [at 206]
It is evident, therefore, that we must remand the matter to the Division of Workers' Compensation for the requisite factfinding. We foresee the probability that additional medical testimony will be needed for that purpose; consequently, to the extent necessary, a further hearing shall be held. If the judge of compensation should determine that American Home was the carrier when petitioner's occupational disease first reached a compensable stage, then it would be entirely liable for the consequences thereof, and the judgment would be amended accordingly, with appropriate provision for reimbursement to Commercial Union. On the other hand, if Commercial Union is found to have been the carrier at that time, then the further issue requiring resolution would be the extent of American Home's liability.
On this issue, too, we find fault with the opinion of the judge of compensation in its implicit assumption that American Home should be responsible for the entire increase in permanent disability from 60% to total. If the increased disability here resulted from continued exposure, as distinguished from the natural progress of the disease, an award against the subsequent carrier would be in order. Ort v. Taylor-Wharton Co., 47 N.J. 198, 206 (1966). But if the increased disability followed as the natural progress of the disease, the first carrier would be responsible. Ibid. We need not concern ourselves with the latter proposition, since the judge of compensation found, with support in the record, that petitioner's disease was aggravated and accelerated by the continued exposure. The complicating factor, apparently overlooked by the judge of compensation, is that the increased disability here seems to be chargeable both to the natural progress of the disease and the continued exposure. *338 At least, there is no medical testimony in the record that the cancer would have remained static except for the further exposure. Where the increased disability is chargeable to both, as appears to be the case here, liability for the increased disability should be apportioned between the two carriers in the proportions that the increase is chargeable to each cause, respectively. Schnaars v. Canfield Oil Co., 91 N.J. Super. 433, 439 (App.Div. 1966).
The medical proofs before the Division were not of such nature as to permit resolution of the issue of apportionment. Consequently, on the remand, if it should be determined that an apportionment of liability is to be made, medical testimony should be presented to enable the judge of compensation to make the following determinations: (1) the extent of partial permanent disability at the time the disease first reached a compensable stage; (2) the increase in disability, if any, from the time the disease first reached the compensable stage to the date on which American Home became the carrier; (3) the increase in disability, if any, from them to the date on which petitioner was found to be totally disabled; and (4) the portion of the disability attributable to the natural progression of the disease and that attributable to the continued exposure. American Home's liability, if any, would be for so much of the increase in disability as is chargeable to the continued exposure as distinguished from the natural progression of the disease.
We would expect the judge of compensation to state in detail his findings of fact and conclusions. The judgment shall be amended to the extent necessary to conform to the findings and conclusions, and shall include appropriate provisions for the reimbursement by one carrier to the other for temporary and permanent disability payments and other expenditures made by the latter but properly chargeable to the former. Pending the proceedings on the remand, the present judgment shall remain in force and effect to avoid the interruption of compensation payments to or on behalf of petitioner.
*339 Remanded for further proceedings consistent with the foregoing. Jurisdiction is not retained.