214 N.J. Super. 352 (1986)
519 A.2d 881
TERRY HODGDON, PETITIONER-RESPONDENT,
v.
PROJECT PACKAGING, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 13, 1986.
Decided December 8, 1986.
*354 Before Judges FURMAN, SHEBELL and STERN.
Fred S. Brause, Jr., attorney for appellant Project Packaging, Inc., through its insurance carrier, Pennsylvania Manufacturers Insurance Company (Sheldon Schiffman, on the brief).
Michals, Wahl, Silver & Leitner, attorneys for appellant Project Packaging, Inc., through its insurance carrier, North River Insurance Co. (Robert Silver, on the brief).
Freeman & Barton, attorneys for appellant Project Packaging, Inc., through its insurance carrier, Harleysville Insurance Company (Michael Huber, on the brief).
Wysoker, Glassner & Weingartner, attorneys for respondent (Lester S. Goldblatt and John J. Sharkey, Jr., on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
*355 Pennsylvania Manufacturers Insurance Company ("PMA"), appeals from an order finding that petitioner, Terry Hodgdon, suffered a compensable accident on September 28, 1983 and that only PMA was liable for providing the necessary medical treatment, including surgery to relieve petitioner's carpal tunnel syndrome, and for the payment of temporary disability benefits, rather than any of the other carriers who previously insured respondent.
Petitioner filed a claim petition seeking workers' compensation benefits for injury to his right shoulder and neck based on his allegation that during the period from September 13 to September 28, 1983, "[h]ard work for respondent in use of right arm overhead aggravated, accelerated, exacerbated the compensable injuries of 5/6/81 & 7/27[/82]-9/21/82." Respondent's insurer at the time was PMA.
Petitioner had previously filed a claim petition alleging an accidental injury to his right shoulder on May 6, 1981. At that time respondent was insured by Harleysville Mutual Insurance Company who paid temporary disability payments for 11 4/7 weeks.
Subsequently petitioner filed a claim petition in which he alleged the shoulder condition became worse during the period from July 27, 1982 to September 21, 1982, the date upon which he stopped work as a result of that condition. At that time respondent was insured by North River Insurance Company.
Petitioner filed a motion seeking medical treatment and temporary disability benefits starting from September 29, 1983. He then amended his first claim petition, alleging that on September 28, 1983 he injured his right shoulder and neck as follows: "Standing on top of truck holding wire, attempting to put rope on, crew down the line pulled wire taught [sic], petitioner's right arm was pulled up and over his head almost lifting his body from the truck." Thereafter, petitioner filed a *356 motion for medical care and temporary disability against all three insurance carriers for respondent.
Petitioner next filed a second amended claim petition, alleging an injury to his left arm and left hand in addition to the right shoulder and neck, wherein he described the September 28, 1983 injury as follows:
Standing on top of truck, holding wire by means of rope in left hand, with right hand pushing cables up to put dolly on, crew down line, pulled wire tight, this caused wires to go up and out, pulling right arm overhead almost lifting body from truck. petition [sic] let go with right hand, now petitioner off truck in air; left wrist snagged in rope being used to hold wires, freed slef [sic] and dropped to ground, injured right shoulder, neck, left arm and left hand.
The three petitions were joined for purposes of the hearings on the motions. The judge of compensation held that PMA was solely responsible for supplying medical treatment to petitioner and for the payment of temporary disability benefits beginning September 29, 1983.
PMA filed a motion for leave to appeal which this court denied. The judge of compensation then signed an order submitted by PMA which contained the following paragraph:
14. The Court does further certify that the finding that the Pennsylvania Manufacturer's Association Insurance Co. is responsible for the total temporary disability since September 28, 1983 for the treatment for said conditions is a Final Judgment assessing liability for said conditions, thence the respondent through its insurance company Pennsylvania Manufacturer's Association Insurance Co. and the insurance carriers for the respondent under Claim Petitions No. 82-292 and 82-36091 are hereby absolved from any liability in connection with any injuries sustained in the accident of September 28, 1983, or for any sequelae thereof.
Petitioner, who was 33 years old on the date of the first hearing, testified that he injured his right shoulder when he fell from a pole on May 6, 1981. He was treated and was out of work for three months. When he returned to work, he did "[o]verhead aerial construction," which involved "putting cables on overhead poles."
In August or September 1982 petitioner went back to his doctor complaining of a snapping sensation in his right shoulder and difficulty holding his hand above his head for any length of *357 time. Petitioner claimed he was doing less physical work during the preceding year because of his shoulder. In June 1983 the doctor performed surgery on petitioner's right shoulder. Temporary disability benefits and medical treatment were the subject of a consent order involving Harleysville and North River Insurance Companies.
Petitioner was released to return to work on September 13, 1983, but was told there was no light duty, and went back to doing aerial overhead construction. On September 27 or 28, 1983, he was standing on a truck pushing up a cable, when "the whole thing released off the brake on the jig, shot off in the air, turned the rope, spun me off the truck and left me hanging in the air before I got off the rope." His right shoulder and elbow were caught under the cable and his left arm was also involved. He continued to work for a couple of hours even though his right shoulder hurt, and went to his doctor the next day.
At the end of October petitioner experienced pain radiating down his left arm into the elbow and fingers; his left hand "fell asleep" for about 19 weeks after which the numbness began to subside. In the summer of 1984 he was referred to a neurologist, and it was recommended that he undergo surgery on the left wrist. Petitioner did not return to work following the September cable accident. On June 20, 1984, surgery was recommended to avoid a permanent problem from the carpal tunnel syndrome, as the condition failed to respond to conservative measures.
When asked if the September 28 accident in which petitioner's left hand became tangled in the rope was causally related to the carpal tunnel syndrome, his doctor stated that it was possible, but he could not say that it was probable. He agreed that petitioner's job, which involved considerable overhead work, could, within a reasonable degree of medical probability, "predispose or cause or aggravate" petitioner's carpal tunnel syndrome.
*358 A specialist in surgery and traumatic orthopedic injuries examined petitioner's left hand on January 28, 1985 and testified on his behalf. He concurred in the diagnosis of carpal tunnel syndrome and stated that petitioner's required surgery was "causally related to his occupation, and to the incident which, apparently, happened on the 28th of September of 1983" to a reasonable degree of medical probability.
PMA produced the testimony of a board-certified general surgeon, who examined petitioner on February 8 and July 11, 1984. He found no evidence of carpal tunnel syndrome and stated that evidence of carpal tunnel syndrome would have had to have developed within four to six weeks from the incident in order for there to be a causal relationship.
At the close of the evidence the judge granted petitioner's motion to conform the pleadings to the proofs.

I.
We entertain this appeal at this time although it is arguably interlocutory. PMA has asserted that the appeal is not interlocutory. It states the judgment was certified pursuant to R. 4:42-2 as final by the compensation judge and therefore must be considered a final judgment for appeal purposes under R. 2:2-3(a)(3). We find no indication that R. 4:42-2 was intended to cover workers' compensation orders directing the employer to furnish medical care and awarding temporary disability benefits, or indeed that the rule was intended to apply to decisions of administrative agencies at all. Both R. 2:2-3(a)(3) and 4:42-2 refer to courts and not administrative agencies.
Judah v. General Super Markets, Inc., 99 N.J. Super. 389 (Middlesex Cty.Ct. 1968) considered whether an award of temporary disability benefits and medical expenses was a final judgment for purposes of appeal, as the procedure then stood, to the county court. The county court held:
An employee is not required to wait until his permanent disability is fixed and evaluated before applying for relief. Medical attention or temporary compensation *359 may be ordered by the Workmen's Compensation Division in accordance with R.S. 34:15-15. Voorhees v. Glenwal Co., Inc., 77 N.J. Super. 65 (App.Div. 1962).
The statute providing awards for medical service and temporary compensation creates independent rights apart from the statute authorizing an award for permanent total disability. While the remedy of permanent disability is still to be determined, this is an independent right arising from a common remedy of workmen's compensation and is merely a matter of continuing that portion of the case until the results can be measured. Chickachop v. Manpower, Inc., 84 N.J. Super. 129 (Law Div. 1964). [Id. at 392].
Other courts have taken a contrary view. As stated in Andersen v. Well-Built Homes of Central Jersey, Inc., 69 N.J. Super. 246, 254 (App.Div. 1961): "The award of temporary disability benefits during the pendency of this workmen's compensation proceeding was not appealable as of right prior to a final judgment disposing of all issues." See also Voorhees v. Glenwal Co., Inc., 77 N.J. Super. 65, 66 (App.Div. 1962) (employer obtained leave to appeal from an order awarding temporary disability benefits, which was termed an interlocutory order); Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 135 (Law Div. 1964) (court noted that where permanent disability had not been determined, there was no final judgment).
At the time the order appealed from was entered, R. 4:42-2 provided:
In any action the trial court may direct the entry of final judgment upon less than all of the claims as to all parties only upon a complete adjudication of a separable claim or upon complete adjudication of all of the rights and liabilities asserted in the litigation as to any party, or where a partial summary judgment or other order for payment of part of a claim is awarded. In any such case, a final judgment shall be entered only upon the trial court's certification that there is no just reason for delay.[1] In the absence of such direction and determination any order or other from of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.
*360 A trial judge must "spell out his reasons for utilizing R. 4:42-2...." Leonardis v. Bunnell, 164 N.J. Super. 338, 340 (App.Div. 1978), certif. den. 81 N.J. 265 (1979). This court is not bound by a trial judge's improvident certification. Taylor by Wurgaft v. General Elec. Co., 208 N.J. Super. 207, 211 (App. Div. 1986).
Only if petitioner were not to seek permanent disability benefits would the order fully dispose of petitioner's entire claim against PMA. However, PMA's liability for medical treatment and temporary disability benefits was enforceable prior to any eventual adjudication regarding permanent disability. We are of the view that there should be no need to certify the order as final in order to permit such enforcement. A serious injustice might occur if a respondent were required to pay an award for temporary disability and medical services and then be unable to obtain the return of its monies in the event of reversal. It would also be a matter of concern to a petitioner to receive such payments with the prospect of possible repayment being required.

II.
The scope of appellate review in this case is limited to "a determination of whether the findings of the judge of compensation could reasonably have been reached on sufficient credible evidence present in the whole record, after giving due weight to his expertise in the field and his opportunity of hearing and seeing the witnesses." DeAngelo v. Alsan Masons, Inc., 122 N.J. Super. 88, 89-90 (App.Div.), aff'd o.b. 62 N.J. 581 (1973). See also Bradley v. Henry Townsend Moving & Storage Co., 78 N.J. 532, 535 (1979); Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).
There was sufficient medical evidence to establish that petitioner suffered from carpal tunnel syndrome. Petitioner testified as to the difficulties he experiences with his hand. He explained that he had an opportunity to drive a forklift during *361 the summer but that his doctor did not feel that he should take the job. It is evident petitioner could not return to the same type of work he performed prior to the wrist condition manifesting itself. Petitioner is entitled to temporary disability benefits when unable to work until his disability is found to be permanent in nature after a course of treatment and observation. Harbatuk v. S & S Furniture Systems Insulation, 211 N.J. Super. 614, 620-621 (App.Div. 1986); Chapman v. Atlantic Transportation Co., 21 N.J. Super. 589, 591 (App.Div. 1952), certif. den. 11 N.J. 213 (1953). The ability to do light or intermittent work was not necessarily inconsistent with a finding of total incapacity. Harbatuk, 211 N.J. Super. at 624-625. Further, there was no evidence that petitioner was offered light work and declined it.
PMA maintains it was error to assess liability solely against it for payments necessitated by the carpal tunnel syndrome. While petitioner's treating physician could not say it was medically probable that the September 28 accident was the cause of the wrist condition, his examining expert concluded that it was medically probable that that accident as well as his occupation caused the onset of the carpal tunnel syndrome. He did not say it was improbable that only the accident caused the condition.
We find substantial basis in the record to find that it was the accident that led to the carpal tunnel syndrome and that PMA was wholly responsible for the necessary treatment and temporary disability benefits.
Despite PMA's efforts to impeach the credibility of petitioner's position by stressing that his complaints involving the left wrist did not surface until immediately after the accident, there was medical testimony that there is no significance to the delay as the condition is the type that takes time to develop. Since petitioner had not worked for about a year prior to September 1983, there is reason to doubt that his work prior to that point *362 contributed in any significant way to the development of the carpal tunnel syndrome.

III.
PMA contends that the court should have apportioned liability in accordance with the following rule set forth in Quinn v. Automatic Sprinkler Co., 50 N.J. Super. 468, 477 (App.Div. 1958): "Where there are two or more successive and compensable injuries which combine to produce permanent injury, there should be apportionment among the employers to the degree that each contributes to the total result." It was because proof was lacking as to the degree each employer or carrier contributed toward petitioner's ultimate disability, even though there was proof that each accident contributed substantially, that the court in Quinn apportioned liability equally among the separate carriers. Id. at 479-481.
There was no allegation in the present case that the previous compensable accidents involving petitioner's shoulder contributed to his carpal tunnel syndrome. The judge found it resulted from the last accident when PMA was on the risk; thus, the Quinn rule is not applicable. Even if the nature of petitioner's work over the years contributed to the condition, such a finding would have called for application of the occupational disease analysis found in Bond v. Rose Ribbon & Carbon Mfg. Co., 42 N.J. 308, 311 (1964). In Bond the Court held that where an employee's exposure to work conditions activates or causes a progressive occupational disease, which remains undisclosed and unknown for a period of time, the employer or carrier during whose coverage the disease was disclosed will be held solely liable. Ibid. See also Cusatis v. American Cyanamid, 176 N.J. Super. 329, 335-336 (App.Div. 1980). In either case the liability for this condition falls on PMA.
We affirm.
NOTES
[1] Effective January 2, 1986, the rule was amended so that this sentence now provides: "In any such case, a final judgment shall be entered only if the order, if final, would be subject to process to enforce a judgment pursuant to R. 4:59 and if the trial court certifies that there is no just reason for delay of such enforcement."