261 N.J. Super. 309 (1993)
618 A.2d 902
JAMES BAIJNATH, PETITIONER-RESPONDENT, CROSS-APPELLANT,
v.
EAGLE PLYWOOD & DOOR MANUFACTURERS, INC., RESPONDENT-APPELLANT, CROSS-RESPONDENT, AND COILMET CORPORATION (IMPLEADED AS COIL METAL CORPORATION), RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1992.
Decided January 12, 1993.
*310 Before BILDER, BAIME and WALLACE, JJ.
Paula C. Bryant argued the cause for appellant, cross-respondent Eagle Plywood & Door Manufacturers, Inc. (Psak & Parker, attorneys; Ms. Bryant, on the brief).
Jack N. Frost argued the cause for respondent, cross-appellant James Baijnath (Frost & Rhodes, attorneys; Frank D. DeVito, on the letter brief).
Francis T. Giuliano argued the cause for respondent Coilmet Corporation.
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal by an impleaded respondent employer, Eagle Plywood & Door Manufacturers Inc., from a judgment of the Division of Workers' Compensation awarding the petitioner employee, James Baijnath, 10% partial permanent disability for a lumbosacral sprain and strain and 25% partial permanent disability for post traumatic stress disorder manifested by depression. On appeal, Eagle contends that the award against *311 it is barred by N.J.S.A. 34:15-41 because petitioner did not file a claim within two years of the alleged accident and that the Compensation Judge's findings were not supported by the evidence. The petitioner cross-appeals, contending the attorney's fees awarded to him were inadequate.
Petitioner sustained a compensable accident on July 8, 1983 when, as an employee of respondent Coil Metal Corporation[1], he fell injuring his back, left shoulder and back of his head. His medical bills were paid and he received temporary disability benefits. Thereafter, he obtained a $250,000 award in a third party action and the medical and disability benefit liens were satisfied. This appeal arises from the subsequent trial of petitioner's permanent disability claim.
Petitioner remained out of work a little over three months, returning to light duty on October 24, 1983. In December, he again left, returning in February 1984. When he was unable to work, his employment at Coil Metal was terminated. He then went to Eagle Plywood by whom he was employed from February 21, 1984 until September 6, 1984. Eagle Plywood was impleaded by Coil Metal as a subsequent employer. Prior to the first hearing with respect to petitioner's claim of a permanent disability arising from the July 8, 1983 accident, there was no suggestion that there had been any subsequent accident nor had any claim of aggravation been asserted.[2]
On January 18, 1990 while testifying on direct examination, petitioner made it known that an accident had occurred while he was working at Eagle Plywood.

*312 The last day [September 6, 1984] I worked [at Eagle] there was a shocking pain in my back. In the lower back there was a severe burning like blazing on the back, and then my left leg was actually numb. I couldn't stand up any longer.
* * * * * * * *
[Just before I felt the pain] I helped move some doors. Those doors was like about 135 pounds. Four of us lift them.
When he felt the pain he rested and then left work.
I went to the men's room and I stand up there for about 20 minutes to see if I could get over the pain, and it didn't go away. I started to perspire and I went to the supervisor and I said, "Sir, I can't work any more. I'm going to the hospital."
He then went to the Plainfield Health Center and saw Dr. Walsh, the doctor who was still treating him for the 1983 accident.
Dr. Walsh gave me tablets, and she gave me heat treatment and massage, and she recommended bed rest.
As we have already noted, no notice of the 1984 accident was given to Eagle; no claim was filed. Subsequent evidence at the hearing showed that, although petitioner continued to make complaints and receive treatment with respect to the injuries from the 1983 accident, with a single exception, he never reported the 1984 accident to any of the myriad doctors who treated him after that date. The single exception was Dr. Miriam Borton, a psychiatrist who saw petitioner for the first time in the Emergency Room at Muhlenberg Hospital on November 15, 1985.
Petitioner was referred to Dr. Borton by Dr. Walsh because of a diagnosis of depression and suicidal ideation. In connection with that referral and while hospitalized, petitioner received a neurological consultation which led to a diagnosis of post-traumatic syndrome with left sciatic nerve disk pain. At the request of the neurologist, to rule out a L4-L5 disk herniation, a CAT scan was taken which disclosed no herniation but a bulging at L5-S1. There was damage in the form of a bulging of the disk. In expressing her opinion as to the relationship between petitioner's psychiatric difficulties and the trauma he *313 received at work, Dr. Borton made reference to a history, received from petitioner, of the 1984 accident.
After this original injury, he then attempted to go back to work again. And this obsessive compulsive personality, who didn't just want to lie around the house and not take care of his family, he went back to work and sustained another injury by lifting something. He lifted something and he stopped working at that time due to the severe pain that he experienced. And then that's when he started to get depressed. He started to drink because, at that time, it became clear to him as an individual subjectively, because this is his feeling that he was impotent as a man. He is no longer a man in all the sense of the word.
Following the hearings which took eleven separate days and included expert testimony from three doctors specializing in neuropsychiatry and two doctors specializing in orthopedics as well as a treating psychiatrist, the compensation judge found that petitioner has a lumbosacral sprain and strain that is giving him some pain and some flexion difficulties, all of which he found to total 10% of partial permanent disability; that an intervening and subsequent accident had occurred on September 6, 1984 at Eagle Plywood; that he could not apportion the disability between the two accidents; that the 10% of partial permanent disability was therefore the responsibility of Eagle; that petitioner is suffering from a post-traumatic stress disorder manifested by depression due to his sexual problems because of back pain, which he found to be a psychiatric disability of 25% of partial permanent disability; and that this disability is related to the 1984 accident and is the responsibility of Eagle. In his oral decision of October 2, 1991, he summarized it thusly:
Overall, I did find that the petitioner has 10 percent of orthopedic and neurologic disability and 25 percent of psychiatric disability. I do not find that the orthopedic and psychiatric, together, have rendered the petitioner totally and permanently disabled. The respondent Eagle Plywood is liable for the permanent disability since I do find that the September 1984 accident was a separate incident and an intervening subsequent accident to the accident of July 8th, 1983.
On appeal our scope of review limits us to determining "`whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering `the proofs as a whole,' with due regard to the *314 opportunity of the one who heard the witnesses to judge of their credibility [citation omitted] and, in the case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor." Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965) (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)); see De Angelo v. Alsan Masons Inc., 122 N.J. Super. 88, 89-90, 299 A.2d 90 (App.Div. 1973), aff'd o.b., 62 N.J. 581, 303 A.2d 883 (1973). After a review of the record, we are persuaded that the decision of the judge of compensation with respect to petitioner's disability and his finding that there was a subsequent accident during petitioner's employment with Eagle Plywood were based on sufficient credible evidence in the record and must be upheld.
Our conclusion as to the compensation judge's factual findings necessarily results in a legal conclusion that the final judgment must be reversed and set aside. The findings would seem to exonerate Coil Metal. Because petitioner never filed a claim with respect to the Eagle Plywood accident, the claim against it is now barred by N.J.S.A. 34:15-41. Filing within time is jurisdictional and cannot be waived. See Riccioni v. American Cyanamid Co., 23 N.J. Super. 465, 470-471, 93 A.2d 60 (Co.Ct. 1952), aff'd, 26 N.J. Super. 1, 96 A.2d 765 (App.Div. 1953), certif. den., 13 N.J. 289, 99 A.2d 450 (1953); Bocchino v. Best Foods, Inc., 16 N.J. Super. 154, 157, 84 A.2d 40 (Co.Ct. 1951).
The apparent injustice of a result which bars petitioner not only from recovery for the results of an unclaimed accident but also from the results of an acknowledged compensable accident, indeed one for which temporary benefits and medical expenses were paid, leads us inexorably to an examination of the correctness of the compensation judge's conclusion that the absence of evidence which permits an allocation of the injuries as between the two successive compensable injuries, requires the allocation of the full liability to Eagle. See R. 2:10-2.
Where, as here, two successive compensable traumatic injuries combine to produce permanent injury, there should be *315 apportionment among the employers to the degree that each contributes to the total result. See Quinn v. Automatic Sprinkler Co., 50 N.J. Super. 468, 477, 142 A.2d 655 (App.Div. 1958). Here, unfortunately, it would seem that no evidence was presented which permits such an apportionment. None of the doctors who treated petitioner following the first accident but before the second accident testified. This was undoubtedly caused by petitioner's failure to call attention to the second accident. As noted, he filed no claim with Eagle and, with the exception of Dr. Borton, never related it to the doctors who treated him after the second accident. Nonetheless, it is apparent, both from the petitioner's inter-accident history and the temporary disability benefit award he received, that the first accident contributed in some substantial manner to the final result. In such a case, i.e., where the proofs show that each compensable accident contributed substantially to the ultimate disability but proof is lacking as to the contribution of each to the ultimate result, the liability should be apportioned on some equitable basis. In Quinn, the court apportioned the liability equally. Id. at 479-481, 142 A.2d 655; also Kozinsky v. Edison Products Co., 222 N.J. Super. 530, 536, 537 A.2d 737 (App.Div. 1988); Hodgdon v. Project Packaging, Inc., 214 N.J. Super. 352, 362, 519 A.2d 881 (App.Div. 1986). The compensation judge's conclusion that an inability to "break down disability between the two accidents" should lead to total responsibility on the part of the last employer was error.
The rule as to occupational injuries is significantly different. See Bond v. Rose Ribbon & Carbon Mfg. Co., 42 N.J. 308, 311, 200 A.2d 322 (1964). Occupational injuries have an insidious etiology. They can exist for a protracted period without objective manifestation. An effort to apportion the result among the relevant historical employers and/or insurance carriers would be totally speculative. Ibid. Traumatic injuries are quite different. Their incidence is fixed and determinable. The allocation of responsibility may be difficult; the proofs may not *316 permit of certainty. However, there are distinct harms and some reasonable basis in the facts for allocation, see Dafler v. Raymark Industries, Inc., 259 N.J. Super. 17, 28, 611 A.2d 136 (App.Div. 1992); Restatement (Second) of Torts § 433A (1965), and mere lack of certainty is not a bar to a damage award, see Tessmar v. Grosner, 23 N.J. 193, 203, 128 A.2d 467 (1957). Moreover, an understanding of the need to present better allocation proofs may obviate the theoretical difficulties in traumatic injury situations. In this very case the difficulty stems from a failure to produce doctors who treated petitioner before as well as after the second accident.
To summarize, the trial judge's findings as to disability are supported by substantial evidence in the record and are affirmed; because no claim was filed, the claim against Eagle must be dismissed; the liability must be apportioned on some factual or equitable basis (in the absence of any other basis equally as in Quinn); the existing judgment must be vacated and a judgment representing the appropriate allocation entered against Coil Metal. The vacation of the judgment makes petitioner's cross-appeal moot.
The matter is remanded for further proceedings in accordance with our opinion. We do not retain jurisdiction.
NOTES
[1] Apparently the correct name is Coilmet Corporation. We retain the name used below.
[2] In its affidavit in support of its motion to implead Eagle, Coil Metal merely stated that petitioner had worked for Eagle from March 1984 until September 6, 1984; that he left Eagle "after advising them he was leaving for another position that paid more money"; and "that upon information and belief, all or part of the Petitioner's present disability is causally related to his employment with [Eagle]".