163 N.J. Super. 297 (1978)
394 A.2d 891
NANCY A. PHILLIPS, PETITIONER-RESPONDENT,
v.
ONEIDA MOTOR FREIGHT, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1978.
Decided November 1, 1978.
*299 Before Judges CONFORD, PRESSLER and KING.
Ms. Linda A. Palazzolo argued the cause for respondent-appellant (Messrs. McElroy, Connell, Foley & Geiser, attorneys; Mr. George J. Kenny, of counsel).
Mr. Robert S. Krause argued the cause for petitioner-respondent (Messrs. Fasolo, Krause & Dexter, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Petitioner filed a dependency claim petition for workers' compensation based upon her husband's death while driving a truck in New York for respondent. Compensability was stipulated, the only issue at the hearing being whether New Jersey had jurisdiction. The judge of compensation found that although decedent was hired and resided in Pennsylvania and was killed in New York, his employment contacts with New Jersey  in that he "worked completely out of" a depot in New Jersey  were sufficient *300 to confer jurisdiction upon this State. On appeal respondent disputes this assessment of an adequate basis for jurisdiction.
The facts were essentially undisputed. Decedent had been employed by respondent as a truck driver from 1959 through the date of his death in June 1974. He was killed in New York as a result of an on-the-job accident. He was initially hired by respondent's Hop Bottom, Pennsylvania office. Decedent at that time resided in Pennsylvania, and his trips commenced in Hop Bottom with a destination in upstate New York.
About 1969, however, decedent began to work on runs beginning in respondent's Carlstadt, New Jersey, terminal and terminating at an upstate New York destination. Nevertheless, decedent continued to reside in Pennsylvania, usually driving his car to Carlstadt on Sunday evenings and leaving it there all week, during which he would make two or three round trips, all beginning and ending at the Carlstadt terminal. Between trips he would sleep overnight at the Carlstadt terminal. Decedent received all his trip instructions and picked up his log books at the Carlstadt terminal. At the end of the week decedent would drive his own car home from Carlstadt to Pennsylvania. He was not reimbursed for his transportation to and from Carlstadt.
Respondent's central accounting office was located in Carlstadt. Decedent's supervisor characterized it as the "main terminal." Regardless of what state they resided in, all of respondent's employees were issued paychecks from the Carlstadt office, and that office deducted from the checks the amounts of tax required by the employees' respective states. Decedent or his wife normally picked up his check at the Hop Bottom office, where it was sent apparently as a matter of employees' convenience. As noted, decedent would receive all his directions from the Carlstadt office, and aside from calling in sick to the Hop Bottom office, he normally had no regular contacts with that office.
On advice of counsel petitioner first instituted a compensation claim in Pennsylvania, where it is pending. Respondent *301 has filed an answer denying liability in that Commonwealth on the ground that decedent was not a Pennsylvania employee at the time of the fatal accident.
Appellant's position on this appeal is that there is no authority in this State for sustaining workers' compensation in a case such as this where New Jersey is neither the place of making of the hiring contract, the residence of the worker nor the locus of the accidental injury. While that appears to be a fact, it is equally true that no decision of the highest court of the State has yet expressly held that such a combination of facts is necessarily fatal to New Jersey jurisdiction. The question is therefore open for first-instance determination whether the presence in this State of the employment situs or relationship alone should suffice to found jurisdiction. For reasons to be set forth, we respond to that question in the affirmative, and affirm.
The making of the contract in New Jersey has long been regarded as the primary basis for positing compensation jurisdiction here. Gotkin v. Weinberg, 2 N.J. 305 (1949); Bowers v. American Bridge Co., 43 N.J. Super. 48 (App. Div. 1956), aff'd o.b. 24 N.J. 390 (1957). Indeed it is clear that the making of the contract in New Jersey is sufficient of itself to vest jurisdiction regardless of the residence of the workman, the situs of the employment relationship or the location of the accident. Ibid; Rivera v. Green Giant Co., 93 N.J. Super. 6 (App. Div. 1966), aff'd o.b. 50 N.J. 284 (1967). However, from an early date, New Jersey courts have accepted jurisdiction despite an out-of-state hiring contract if other significant contacts existed here. American Radiator Co. v. Rogge, 86 N.J.L. 436 (Sup. Ct. 1914), aff'd o.b. 87 N.J.L. 314 (E. & A. 1915), app. dism. 245 U.S. 630, 38 S.Ct. 63, 62 L.Ed. 520 (1917) (employed to work partly in New Jersey and accident here); Davidheiser v. Hay Foundry & Iron Works, 87 N.J.L. 688 (E. & A. 1915) (accidental death in New Jersey); Boyle v. G. & K. Trucking Co., 37 N.J. 104 (1962) (accident in New Jersey and substantial amount of work done here). It would seem *302 from the Boyle case that accidental injury in New Jersey while the employee is performing a work assignment from the employer will suffice for local jurisdiction. 37 N.J. at 112.
Professor Larson has called attention to the undesirable technisms generated by the place-of-contract rule and to resulting "artificial arguments" resting
* * * on the unrealistic character of the place-of-contract test when construed to depend upon the sheer formality of being physically present in a particular geographical subdivision when a signature is scrawled or a word spoken into a telephone mouthpiece. There is nothing in this technicality of relevance to the choice of an appropriate statute for practical compensation purposes. The strict contract view, therefore, has for some years been giving way to the more pertinent inquiry into the location of the employment relation that results from the contract.
[4 Larson's Workmen's Compensation Law, § 87.34 at 16-83 to 16-84 (1978)]
The author goes on to say:
Of the three original theories on extra-territoriality  tort, contract, and employment relation  the last is the most relevant to compensation theory and the least artificial. In this view, the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation. [Id., § 87.41 at 16-84]
While employment situs presumptively begins with the state of contract if the employee works there regularly thereafter, it will be deemed to change when "the employee acquires in the foreign state a fixed and nontemporary employment situs." 4 Larson, op. cit. § 87.42 at 16-85 to 16-86. We regard the fact situation in the present case as presenting a cogent example of employment situs in New Jersey. Every assigned work stint of the decedent began in New Jersey or was concluded here. Consequently every such job performance involved to some extent execution of the *303 work in this State. Decedent received his work assignments at Carlstadt and his equipment was stationed there. His pay checks originated there and he slept there between jobs the entire work week. The composite employment incidents present a most compelling identification of the employment relationship with this State. It appears to us at least as appropriate, in the sense of functional relationship of the work to the State, that a local award of workers' compensation should attend an accident of such a worker, though sustained outside the State, as where the original employment contract is made here but all the subsequent work and the accident take place out of the State, as in Bowers v. American Bridge Co., supra.
This court began to move in the direction of our approach on this appeal in its recent determination in Parks v. Johnson Motor Lines, 156 N.J. Super. 177 (App. Div. 1978). In that case the worker, a resident of New Jersey, entered the employ of respondent, a North Carolina corporation, as a truck driver. The contract, executed in Georgia, provided that it should be governed by North Carolina law. The employee used his own tractor in the work, which involved a preponderant amount of trips originating or terminating in New Jersey, apparently directed from employer depots in Hackensack and Delran in this State. He was injured in Pennsylvania in the course of one trip which began in New York State and was to terminate at Hackensack. We found compensation jurisdiction to exist in this State on the facts stated, expressing agreement with a dictum by the Union County Court in Wenzel v. Zantop Air Transport, Inc., 94 N.J. Super. 326, 335 (1967), aff'd o.b. 97 N.J. Super. 264 (App. Div. 1967), to the effect that
In the light of the instructions from our appellate courts to give a liberal interpretation to coverage under our statute, and the expansion of jurisdictional concepts of due process, our courts might appropriately provide the forum for a compensation action by a resident when more than casual employment services were performed in New Jersey, although the hiring contract and place of injury were elsewhere. [156 N.J. Super. at 181] *304 See also, Beeny v. Teleconsult, Inc., 160 N.J. Super. 22 (App. Div. 1978).
Aside from the incidence of residence in this State of the worker in the Parks case, the facts in the instant case present an even stronger nexus between the employment and the State of New Jersey. While residence of the worker is an appropriate factor to weigh in appraisal of significant contacts with the State, its absence should not be determinative of lack of jurisdiction when all other incidents of the employment relationship are as firmly anchored in this State as those presented here.
As already noted, no decision of any court of last resort in this State precludes a holding of jurisdiction on these facts. We do not regard Crawford v. Trans World Airline, 27 N.J. Super. 567 (Cty. Ct. 1953), as a persuasive authority against jurisdiction here. Indeed, our Supreme Court has observed, in relation to a different problem:
If the injured employee is seeking a compensation remedy, application by the forum of its compensation law, whether it be the state of the injury or the state of the contract or the state of the employment relation, does no violence to the basic principles of workmen's compensation. The employee is provided a prompt and certain recovery and the employer's liability is limited to that provided by the compensation law of the forum, which has a sufficient interest in the work-injury to justify the application of its own law. [Wilson v. Faull, 27 N.J. 105, 116 (1958); emphasis supplied]
There thus appears to be nothing offensive to our workers' compensation jurisprudence in the concept of permitting jurisdiction to vest here when a strong case of employment situs in this State is shown, even if residence of the worker and the place of accident and of the making of the employment contract are elsewhere. That concept appearing to us to be sound in principle and consistent with the liberal policy for construction of the statute which has guided the courts of this State, we declare it valid and applicable to found jurisdiction in this case.
*305 The fact that petitioner has a compensation proceeding pending in Pennsylvania is no barrier to relief here. She may elect to proceed here, where there is jurisdiction, even if her purpose is to seek the highest available amount of compensation. Boyle v. G. & K. Trucking Co., supra, 37 N.J. at 112. She would be obliged, however, to credit the employer in the instant matter with any recovery had in the Pennsylvania proceeding, ibid.; Bowers v. American Bridge Co., supra, 43 N.J. Super. at 65. Cf. Cramer v. State Concrete Corp., 39 N.J. 507, 511 (1963).
Judgment affirmed.