786 A.2d 114 (2001)
345 N.J. Super. 549
John J. WILLIAMS, Petitioner-Respondent,
v.
The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 2001.
Decided December 10, 2001.
*115 Michael D. Driscoll, New Jersey Solicitor, argued the cause for appellant (Hugh H. Welsh, Deputy General Counsel, of counsel; Howard Conkling, on the brief).
James P. Sheehan, argued the cause for respondent (Brian P. Campbell, of counsel and on the brief).
Before Judges PRESSLER, WEFING and PARRILLO.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is a workers' compensation case. The issue before us is whether the New Jersey Division of Workers' Compensation properly exercised subject matter jurisdiction over the claim petition of petitioner, John J. Williams, an employee of Port Authority of New York and New Jersey for some twenty-eight years. Petitioner claims to have suffered an occupational pulmonary disease as the result of his continuous exposure to toxic substances on the job from February 1973 to some time in 1994. He worked in New Jersey, however, only during the first four months of that period and thereafter exclusively in New York at LaGuardia and Kennedy Airports. The judge of compensation concluded that the initial four-month period was sufficient to constitute New Jersey a site of the injury and, therefore, sufficient to confer subject matter jurisdiction on this State. We agree and affirm the award to petitioner of twenty percent of partial total.
The facts relevant to the jurisdictional issue are not in dispute. Petitioner is a resident of New York and has been since his employment by Port Authority in 1969. He has never lived in New Jersey. New York is the place where the employment relationship arose. For the first three to four years of petitioner's Port Authority employment he worked as an elevator operator in New York. He was then assigned to maintenance work. His first maintenance *116 assignment was on the New Jersey side of the George Washington Bridge cleaning the toll booths and the tiled walls of the tunnels leading out of the bridge proper. He worked eight-hour shifts five days a week doing these tasks which involved strong and toxic chemicals as cleaning agents and exposed him to a constant stream of exhaust fumes from the vehicles crossing the bridge. He was usually, but not always, provided with a protective face mask. After four months, he was assigned to do substantially the same work using substantially the same chemicals at LaGuardia Airport. As he explained his job:
[At] LaGuardia I was building and grounds attendant as well. My duties there was to clean tiles. We have to go out in the taxiways, the runways. Sometimes cleaning inside the terminal with mopping and cleaning stuff like that.
After about eight years at LaGuardia Airport, petitioner was reassigned to Kennedy Airport, doing essentially the same work with essentially the same exposure to chemicals and exhaust fumes. He continued in that job at Kennedy Airport until 1994, when he accepted work as a skycap. He retired three years later in 1997. He first saw a physician, a Port Authority physician, for his pulmonary complaints in 1993 and for some time has been under the care of a physician for those complaints.[1] Petitioner's medical expert witness, Dr. Malcolm H. Hermele, opined, based on his examination of petitioner and his work history, that he suffers from "chronic bronchitis and probable restrictive pulmonary disease," estimated as "a permanent pulmonary disability of 40 percent." The theory of this occupational disability is encapsulated by the hypothetical question asked of Dr. Hermele:
Doctor, I want you to assume the following facts as being true. That the petitioner was employed by the Port Authority from 1969 to 1997, most of which his time was spent as a bridge and tunnel agent or maintenance man, and the last three years as a sky cap.
He testified that he was exposed during his employment to exhaust, fumes from motor vehicles, trucks, planes, buses, he was exposed to various cleaning chemicals, to dust, to dirt, smoke, sand, and that his face and uniform was dirty after work. He had complaints of coughing up phlegm, he testified he had labored breathing in the A.M., he had difficult breathing after walking two blocks, and the petitioner indicated that he smoked in the past about a pack every three days.
If these facts taken as true, are they consistent with your opinion regarding the petitioner's permanent disability and percentage that you affixed to it?
Dr. Hermele's response was as follows:
Yes, sir. It's my opinion that his chest condition was causally related to and or exacerbated by his prolonged exposure to the various pulmonary noxiousations that you mentioned while employed by the Port Authority of New York and New Jersey.
As we have noted, Port Authority challenges the ensuing award to petitioner on jurisdictional grounds only. The principles governing the subject matter jurisdiction of the Division of Workers' Compensation have been well settled in this State for four decades. Thus in Boyle v. G. & K. Trucking Co., 37 N.J. 104, 179 A.2d 514 (1962), Justice Jacobs, writing for the Supreme Court, made clear that while the state in which the employment relationship *117 was entered into and the state or states of the parties' residences certainly have subject matter jurisdiction, so also does the state in which the worker sustains an injury even if that injury is the only nexus it has to the parties and their relationship. As he explained:
The petitioner is justly permitted to file his claim for compensation in our State because he was accidently injured here while performing his duties here on a work assignment from his employer. While this may afford a choice of jurisdictions to the employee (see Wilson v. Faull, supra, 27 N.J. at p. 117, 141 A.2d 768; Gotkin v. Weinberg, 2 N.J. 305, 307, 66 A.2d 438 (1949)), it does not afford double compensation (see Bowers v. American Bridge Co., supra, 43 N.J.Super. at p. 65, 127 A.2d 580; In re Lavoie's Case, supra, 135 N.E.2d at p. 751) and to the extent that it allows the employee to seek the highest available amount of compensation it is consonant with the high-minded remedial purposes underlying compensation enactments.

[Id. at 112, 179 A.2d 514.]
We have followed that rule since. See, e.g., Phillips v. Oneida Freight, Inc., 163 N.J.Super. 297, 301, 394 A.2d 891 (App.Div.1978); Toebe v. Employers Mut. of Wausau, 114 N.J.Super. 39, 43, 274 A.2d 820 (App.Div.1971), rev'd on other grounds, 63 N.J. 198, 306 A.2d 66 (1973); McAllister v. Bd. of Ed., Kearny, 79 N.J.Super. 249, 260, 191 A.2d 212 (App.Div.1963), aff'd, 42 N.J. 56, 198 A.2d 765 (1964).
We recognize that New Jersey's subject matter jurisdiction cannot here be predicated solely upon Port Authority's status as a bi-state agency. Connolly v. Port Auth., 317 N.J.Super. 315, 321, 722 A.2d 110 (App.Div.1998). Nor can it be predicated on petitioner's place of residence or on the place where the employment relationship was entered into. The only nexus to New Jersey is the four-month period of petitioner's employment in New Jersey in 1973. Thus the sole issue before us is whether petitioner's exposure to toxic substances during that period, immediately followed by an additional twenty-one year exposure to the same or similar toxic substances in New York, is sufficient to sustain the compensation judge's finding that an injury occurred in New Jersey. In concluding that it is, we rely on our well-settled case law regarding the nature of occupational disease.
N.J.S.A. 34:15-31a defines "compensable occupational disease" for purposes of the Workers Compensation Act, N.J.S.A. 34:15-1, et seq., as "all diseases arising out of and in the course of employment, which are due in a material degree to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or place of employment." Although the statute does not expressly so provide, it is judicially recognized that there is a category of gradually progressive occupational disease resulting from cumulative exposure whose symptoms may not be manifest until there has been prolonged exposure, and, consequently, determination of the date of onset of the disease defies ascertainment. These characteristics of the disease process inform the law of workers' occupational disease and underlie both legislative and judicial resolution of the special problems raised by its inherent nature.
Thus, because manifestation of the injury may occur long after the exposure causing the injury, the statute of limitations does not begin to run until the worker knows or is chargeable with knowledge of the disability and its work-relatedness. N.J.S.A. 34:15-34. And see Earl v. Johnson & Johnson, 158 N.J. 155, 728 A.2d 820 *118 (1999); Panzino v. Cont'l Can Co., 71 N.J. 298, 303, 364 A.2d 1043 (1976). As Judge Conford had expressed it in Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J.Super. 187, 206-207, 139 A.2d 436 (App.Div.), certif. denied, 27 N.J. 398, 143 A.2d 9 (1958),
When the disease is of a nature which is gradually progressive and does not manifest the kind of tangible bodily injury or impairment which is specifically demonstrable, and cognizable even by a layman, but takes its toll in a general over-all condition of malaise eventually forcing discontinuance of work at the injurious occupation, the inception of compensable status is when such discontinuance at work begins.
Moreover, because of the difficulty, if not the impossibility, of determining when, in terms of the exposure, the disease process commenced, it has long been settled that where a worker is employed by successive employers but is exposed to the same deleterious work conditions by all of them, considerations of both practicality and equity dictate that the entire burden be borne by the last employer. Thus as the Court explained in Bond v. Rose Ribbon & Carbon Mfg. Co., 42 N.J. 308, 311, 200 A.2d 322 (1964):
Where, as here, an employee is exposed to work conditions which activate or cause a progressive occupational disease, and the existence of such disease remains undisclosed and unknown over a period of time, it is impossible upon ultimate revelation of its existence by medical examination, work incapacity, or manifest loss of physical function, to pinpoint in retrospect, the triggering date of such activation or inception. It is also impossible to reconstruct the daily rate of progress of the disease from its genesis to discovery through one of the afore-mentioned means, where such employee continues to be exposed to work conditions which aggravate the existing disease in unascertainable stages. It follows that where the employment under such work conditions was under the aegis of successive employers or insurance carriers, from initial infection or activation to discovery or manifestation, it is impossible to accurately determine the inception and the rate of progress of the disease during such respective periods of employment or insurance coverage. Therefore, any apportionment of compensation liability between the successive employments or insurance coverages, must of necessity be speculative and arbitrary. To avoid the morass into which litigation would be pitched were apportionment required, and to eliminate the recognized unsatisfactory nature of any such attempted ascertainment, we conceive that the most workable rule and that most consistent with the philosophy and public policy of the Workmen's Compensation Act is to hold liable that employer or carrier during whose employment or coverage the disease was disclosed as above noted, i.e., by medical examination, work incapacity, or manifest loss of physical function. Although this test is admittedly arbitrary and may on occasion cause some apparently unfair results, over the years it should result in an equitable balancing of liability. Under the circumstances we conceive it to be the fairest and most workable thesis.
All that is required for the imposition of liability on the last employer is that the worker's exposure while employed by the last employer is substantial and contributed in a material degree to the injury. See Levas v. Midway Sheet Metal, 317 N.J.Super. 160, 174, 721 A.2d 724 (App.Div.1998); Falcon v. Am. Cyanamid, 221 N.J.Super. 252, 534 A.2d 403 (App.Div.1987). Compare *119 Gulick v. H.M. Enoch, Inc., 280 N.J.Super. 96, 654 A.2d 987 (App.Div.1995), declining to impose liability on the last employer for whom the petitioner had worked only three days.
Finally, in Peck v. Newark Morning Ledger, Co., 344 N.J.Super. 169, 184, 781 A.2d 58 (App.Div.2001), in construing N.J.S.A. 34:15-9, which permits the employee to waive the benefits of the compensation no-fault system, we held that not only must the waiver be made before the accident but also that in the case of occupational injury or disease, the waiver must be made before the commencement of the environmental exposure that later proved to have caused the disease or injury. That holding is clearly based upon the recognition that the onset of the disease process, if not its manifestation, is and must be for all practical purposes equatable with the onset of the exposure. That recognition, moreover, comports with the judicial approach in other areas of the law involving illness or injury attributable to exposure to toxic substances which is not manifest until long after the exposure or until there has been a prolonged period of exposure. Illustratively, in opting for the continuous trigger approach in environmental contamination coverage cases, the Supreme Court has made it clear that the "injury occurs during each phase of environmental contamination exposure, exposure in residence (defined as further progression of injury even after exposure has ceased), and manifestation of disease." Owens-Illinois, Inc. v. United Ins. Co., 138 N.J. 437, 451, 650 A.2d 974 (1994). See also, in the products liability field, James v. Bessemer Processing Co., 155 N.J. 279, 300-301, 714 A.2d 898 (1998) (adopting the so-called "frequency, regularity and proximity" test in imposing liability for asbestos-related diseases, imposing liability on any defendant meeting that test).
The issue here, as we view it, is simply one of the substantiality of the four-month period of exposure viewed in the context of petitioner's working life from February 1973, when he began work in New Jersey, until 1994 when his regular and continuous exposure to toxic substances and exhaust fumes ceased. Gulick, supra, 280 N.J.Super. 96, 654 A.2d 987, teaches us that a "back-end" exposure of three days is insufficient for imposing liability on the last employer. But what of a four-month "front-end" exposure?
We are persuaded that petitioner's four-month exposure on a daily basis was sufficiently substantial to constitute an injury. During that time period, as he described his job, he was, on a daily basis and for eight hours each day, cleaning toll booths inside and out, "sweeping, degreasing with chemicals which cut the grease from the cement and also cleaning windows on the booths where people breeze through." He used the degreasing chemicals both in cleaning toll booths and in "washing down the tiles in the tunnel where the bridge meets coming out." With respect to the tunnel tiles, he explained that "they have what they call a flush truck and you would get on the truck and you would wash the walls down with cleaning chemical and like a mop." He further explained that
Yeah, [I was] exposed to like smoke and stuff from the cars because you're inside this tunnel and they don't close the whole tunnel. They don't close down like one lane and you're dealing with the smoke and smug coming from the traffic and fumes from the traffic going back and forth out. And also there's accumulation from the smell. From the cleaning agent is a smoke, I mean a chemical that you will smell too. It is not, you know, very healthy.
Certainly Port Authority recognized that the hazard was sufficient to require respirator *120 masks although, according to petitioner, they were not provided on a daily basis. In our view this was not a casual, brief or insubstantial period of exposure.
Because it cannot be determined when during the period of exposure as a continuum, including the exposure on the bridge and at the New York airports, the pulmonary disease process commenced, we see no reason not to apply the rule we applied in Peck, supra, 344 N.J.Super. 169, 781 A.2d 58, namely that for all practical purposes, the commencement of a continuous period of exposure and the commencement of the disease process are simultaneous. We are satisfied that that rule promotes the beneficent remedial purposes of the workers' compensation scheme and that its application here, as Justice Jacobs pointed out in Boyle, supra, 37 N.J. 104, 179 A.2d 514, affords the worker a reasonable choice of forum where there may be multiple available forums. In sum, we conclude that in the circumstances here, petitioner's four-month employment in New Jersey resulted in an injury sufficient to confer subject matter jurisdiction on the New Jersey Division of Workers' Compensation.
The judgment appealed from is affirmed.
WEFING, J.A.D., dissenting.
My colleagues have succinctly stated the issue in this case: may petitioner's four-month period of assignment to the George Washington Bridge as a maintenance worker be deemed "substantial" in the context of petitioner's twenty-eight year employment with the Port Authority of New York and New Jersey (Port Authority), the entire balance of which occurred in the State of New York, so as to confer jurisdiction over petitioner's worker's compensation claim upon the State of New Jersey? My colleagues conclude that is; I am unable to agree and therefore respectfully dissent.
I have no disagreement with the legal principles so lucidly set forth by my colleagues in terms of an employer's potential liability for an employee's progressive occupational disease that results from cumulative exposure over a period of time. Rather, I consider them inapplicable; we are not confronted with a question of liability, we are dealing only with a question of jurisdiction. Indeed, the limited scope of the question before us is illustrated by the agreement of counsel for the Port Authority at oral argument that it would raise no question of timeliness if we reversed the judge of compensation and petitioner, a New York resident, who was hired within New York and worked within New York for his entire work life with the exception of the four months he was assigned to the George Washington Bridge, filed a new worker's compensation petition with the appropriate agency within the State of New York.
I consider both Boyle v. G. & K. Trucking Co., 37 N.J. 104, 179 A.2d 514 (1962) and Peck v. Newark Morning Ledger Co., 344 N.J.Super. 169, 781 A.2d 58 (App.Div.2001), cited by my colleagues, distinguishable from the present matter. In Boyle, the petitioner was a truck driver who lived in New Jersey. He was employed by a New York company; the nature of his route involved him driving through New Jersey on a regular basis. Although the parties disputed the frequency with which he was called upon to make stops within New Jersey, there was no dispute that he was required to drive through this state on a daily basis. While doing so, he was injured in an accident which occurred in New Jersey. Not surprisingly, the Supreme Court concluded that New Jersey *121 had jurisdiction over his worker's compensation claim. In Peck, we were confronted with an employer seeking to evade responsibility for a worker's compensation claim for carpal tunnel syndrome; the employer had required its employees to execute waivers of their statutory rights to seek workers' compensation in order to maintain their employment. Because we were concerned about the possibility of abuse on the part of an employer exacting such waivers, we held that any waiver would have to be executed in advance of the occupational exposure, not simply in advance of manifestation of the results of that exposure. Peck, supra, 344 N.J.Super. at 185, 781 A.2d 58.
Petitioner worked twenty-eight years with the Port Authority. Only four months of that time was spent in New Jersey, and that more than twenty years ago. That is, in my judgment, insufficient to warrant New Jersey exercising jurisdiction over petitioner's workers' compensation claim. From all that appears on this record, petitioner has an adequate remedy available in New York and, as I have noted, Port Authority has represented it will not interpose any objection on grounds of timeliness to such a New York claim proceeding. I would reverse the order under review and leave petitioner to commence proceedings in New York.
NOTES
[1] Although petitioner also claimed orthopedic disability resulting from the Port Authority job, that claim was rejected by the compensation judge.