813 A.2d 531

JOHN J. WILLIAMS, PETITIONER–RESPONDENT, v. THE
PORT AUTHORITY OF NEW YORK AND NEW
JERSEY, RESPONDENT–APPELLANT.

Argued October 8, 2002—Decided January 14, 2003.

*Michael D. Driscoll* argued the cause for appellant (*Hugh H. Welsh, Deputy General Counsel,* attorney; *Christopher J. Neumann, Howard D. Conkling* and *George P. Cook,* on the briefs).

*Brian P. Campbell* argued the cause for respondent.

The opinion of the Court was delivered by

COLEMAN, J.

In this workers' compensation case, the petitioner has filed a claim alleging that he has sustained an occupational pulmonary disease that is causally related to his twenty-eight years of employment with the Port Authority of New York and New Jersey (Port Authority). The sole issue before us is whether the New Jersey Division of Workers' Compensation (Division) should have exercised subject-matter jurisdiction based on four months of exposure in New Jersey that predated twenty-one years of subsequent exposure in New York. The Division and a majority in the Appellate Division held that the four-month exposure was sufficiently substantial to constitute injury, thereby conferring jurisdiction. We disagree and reverse.

I.

Petitioner was employed by the Port Authority from 1969 until the time of his age retirement in 1997. The employment contract was made in New York where petitioner resided throughout his

employment. Prior to February 1973, petitioner worked as an elevator operator in New York. Thereafter, he was assigned to perform maintenance work. He worked from February 4, 1973, until June 11, 1973, a period of approximately four months, on the New Jersey side of the George Washington Bridge cleaning tollbooths and tiled walls of the tunnels associated with the bridge. He used strong chemicals as cleaning and degreasing agents. In addition, he was exposed to exhaust fumes from vehicles crossing the bridge. At no time during that four-month interval did petitioner complain of symptoms or a disability related to his work. At the end of the four months, petitioner was assigned to perform work at LaGuardia Airport, using the same chemicals and degreasing agents, where he remained for approximately eight years. He was then assigned to perform the same work at Kennedy Airport where he worked until 1994 when he accepted a skycap position. While working at the airports, he also was exposed to exhaust fumes from planes using the taxiways and runways. He retired from the skycap job in 1997 based on his age. Petitioner first consulted a physician for pulmonary problems in 1993. His pulmonary problem, for which he seeks compensation, has been diagnosed by petitioner's expert as "chronic bronchitis and probable restrictive pulmonary disease."

In May 1997, petitioner filed an occupational workers' compensation claim with the Division alleging, among other conditions, pulmonary disability related to his work exposure between September 22, 1969, and May 15, 1997. Although the Port Authority raised the defense of lack of subject-matter jurisdiction in its answer, the Judge of Compensation reserved decision on the jurisdictional issue until the conclusion of the trial. At the conclusion of the trial, the judge found that the Division should exercise jurisdiction and awarded petitioner a partial permanent disability of twenty percent for chronic bronchitis. The Port Authority appealed, contending that the Division should not have exercised extraterritorial jurisdiction.

A divided panel in the Appellate Division in a published opinion, *Williams v. Port Authority,* 345 *N.J.Super.* 549, 552–53, 786 *A.*2d 114 (2001), relied on this Court's opinion in *Boyle v. G. & K. Trucking Co.,* 37 *N.J.* 104, 112, 179 *A.*2d 514 (1962), and affirmed. The majority concluded that petitioner sustained an injury in New Jersey during the four months of exposure in this State. *Williams, supra,* 345 *N.J.Super.* at 551–53, 786 *A.*2d 114. The court reasoned that because petitioner had a gradually progressive occupational disease from the cumulative exposure, our decisional law regarding apportionment of occupational disease disability among successive employers, *Bond v. Rose Ribbon & Carbon Mfg. Co.,* 42 *N.J.* 308, 311, 200 *A.*2d 322 (1964), and case law related to the computation of the statute of limitations in occupational disease cases, *Earl v. Johnson & Johnson,* 158 *N.J.* 155, 161, 728 *A.*2d 820 (1999), should be followed in determining whether petitioner's four-month employment exposure in New Jersey was sufficient to permit the Division to exercise jurisdiction. *Williams, supra,* 345 *N.J.Super.* at 554–55, 786 *A.*2d 114. The majority concluded that petitioner's exposure in New Jersey "was not a casual, brief or insubstantial period of exposure." *Id.* at 557, 786 *A.*2d 114. Finally, the majority concluded that because it cannot be determined at what point during the twenty-one year exposure the pulmonary-disease process commenced, it should be deemed to have commenced simultaneously with the beginning of the exposure on February 4, 1973 in New Jersey. *Ibid.*

The dissenting member of the panel concluded that the majority's reliance on *Bond, Earl,* and *Peck v. Newark Morning Ledger Co.,* 344 *N.J.Super.* 169, 781 *A.*2d 58 (App.Div.2001), was misplaced. *Williams, supra,* 345 *N.J.Super.* at 558, 786 *A.*2d 114 (Wefing, J., dissenting). That member asserted that the issue before the court was one of jurisdiction and not one involving the statute of limitations, liability for exposure, or waiver of workers' compensation benefits. *Ibid.* Judge Wefing concluded that petitioner's four months of work in New Jersey, which predated the termination of his last exposure by more than twenty-one years, were insufficient to warrant New Jersey exercising jurisdiction.

*Id.* at 559, 786 *A.*2d 114. This appeal is before us based on that dissent. *R.* 2:2–1(a)(2).

## II.

Petitioner invoked the jurisdiction of the Division based on the assertion that he was injured in this State. He took that position because the four-month work exposure is his only nexus to New Jersey. The Port Authority contends that New Jersey has no legitimate interest in accepting jurisdiction based on petitioner's assertion that an injury occurred here given that all but four months of petitioner's twenty-eight-year career with the Port Authority was spent in New York. The Port Authority argues that the work in New Jersey was for such a short time and so long ago that petitioner is unable to demonstrate that he was injured here.

### A.

Initially, we must determine what should be the appropriate standard for resolving whether an occupational exposure in this State sufficiently caused an injury in this State to permit the invocation of the Division's jurisdiction. We begin our analysis with *Boyle v. G. & K. Trucking Co., supra,* 37 *N.J.* at 112, 179 *A.*2d 514, where the Court held that the Division has jurisdiction to entertain a claim filed by a resident employed by an out-of-state business when "he was accidentally injured here while performing his duties here on a work assignment from his employer." *Ibid. Boyle* involved traumatic injuries caused by an automobile accident and did not purport to establish a standard with respect to occupational disease claims. *Id.* at 106, 179 *A.*2d 514. It did, however, cite with approval Professor Arthur Larson's list of practical factors that should be considered when determining whether a state should exercise its jurisdiction to hear a "claim by a workman hired elsewhere but injured within its borders." *Id.* at 109, 179 *A.*2d 514. Those factors are:

1. Place where the injury occurred;
2. Place of making the contract;

3. Place where the employment relation exists or is carried out;
4. Place where the industry is localized;
5. Place where the employee resides; or
6. Place whose statute the parties expressly adopted by contract.

[9 *Larson's Workers' Compensation Law* § 142.01 at 142–2 (2000).]

Professor Larson also provides guidance with respect to which state's law should control if jurisdiction is exercised. He states:

When one of these [factors] falls within the local state, and some or all of the others occur in another state, the question arises whether the local state can apply its statute without being accused of denying full faith and credit to the statute of the other. As matters now stand, it is clear that the state which was the *locus* of any one of the first three items-contract, injury or employment-and probably also of the next two-employee residence and business localization-can constitutionally apply its statute if it wants to.

[*Ibid.*]

Although the New Jersey Workers' Compensation Act (Act), *N.J.S.A.* 34:15–1 to –128, does not address the issue of extraterritoriality, *Connolly v. Port Authority*, 317 *N.J.Super.* 315, 318, 722 *A.2d* 110 (App.Div.1998), all of the cases cited in *Boyle* involve accidents occurring in New Jersey as opposed to periods of occupational exposure within New Jersey. *Id.* at 107–08, 179 *A.2d* 514. The fact that the employer is a bi-state agency has not heretofore been recognized as a basis to assume jurisdiction. *Connolly, supra,* 317 *N.J.Super.* at 320–21, 722 *A.2d* 110. Indeed, the majority in this case recognized as much. *Williams, supra,* 345 *N.J.Super.* at 553, 786 *A.2d* 114.

█ The traumatic accidents involved in *Boyle* and cases cited therein that caused injury in New Jersey, thereby satisfying Professor Larson's place of injury extraterritoriality requirement, involved claims that allegedly satisfied the Act's requirements for a compensable accident, *N.J.S.A.* 34:15–7. There is a substantial difference between an accidental injury and an occupational injury. A compensable accident, although not defined in the Act, has been defined judicially as an " 'unlooked for mishap or an untoward event which is not expected or designed.' " *Ciuba v. Irvington Varnish & Insulator Co.*, 27 *N.J.* 127, 134, 141 *A.2d* 761 (1958); *Joy v. Florence Pipe Foundry Co.*, 64 *N.J.Super.* 13, 20, 165 *A.2d*

191 (App.Div.1960) (quoting *Bryant v. Fissell,* 84 *N.J.L.* 72, 76, 86 *A.* 458 (N.J.Sup.Ct.1913)), *certif. denied,* 34 *N.J.* 67, 167 *A.2d* 55 (1961). Thus, the concept of injury is simple when the injury has been caused by a traumatic accident, such as occurred in *Boyle,* because the injuries are evident almost immediately. For extra-territorial-jurisdictional purposes, a single traumatic event forms the sole basis for compensation sought for the injuries caused by the event. Therefore, the single accidental injury involved in the *Boyle*-type case provides a substantial nexus to New Jersey.

In contrast, an occupational injury based on an occupational exposure at work over a period of time is much more complex. Yet, when a petitioner seeks to invoke the subject-matter jurisdiction of the Division based on the assertion of an occupational injury, meaning an occupational case in which the injury was caused or occurred in New Jersey, a standard must be established that is comparable to the *Boyle* standard used in accident cases. Such a standard is required because the Act directs that claims for accidental injuries and death, and claims for occupational injuries and death, generally should be treated the same. *N.J.S.A.* 34:15-35. However, unlike most accidental-traumatic injuries, many occupational diseases generally remain unknown or undisclosed throughout a long history of continued work exposure. But that fact alone is an insufficient basis to hold that *any* exposure in New Jersey, even for a few days or weeks that may minimally contribute to the development of an occupational disease, should permit the Division to exercise jurisdiction.

■ Because there are critical differences between accidental and occupational injuries, the appropriate starting point in the formulation of a standard for deciding when to exercise extraterritorial jurisdiction in occupational injury cases is the occupational disease section of the Act itself, *N.J.S.A.* 34:15-31(a). That subsection defines "compensable occupational disease[s]" as those diseases established by a preponderance of the credible evidence to have arisen "out of and in the course of employment, which are due in a *material degree* to causes and conditions which are or

were characteristic of or peculiar to a particular trade, occupation, process or place of employment." *Ibid.* (emphasis added). "Material degree" means " 'a degree substantially greater than *de minimis.*' " *Fiore v. Consol. Freightways,* 140 *N.J.* 452, 467, 659 *A.*2d 436 (1995) (quoting *Dwyer v. Ford Motor Co.,* 36 *N.J.* 487, 493–94, 178 *A.*2d 161 (1962)); *see also N.J.S.A.* 34:15–7.2 (defining material degree as "an appreciable degree or a degree substantially greater than de minimis").

 Being guided by the principle that New Jersey generally will take jurisdiction and apply its Act when the State has a substantial interest, such as when an injury has occurred in this State, we adopt the following benchmark for determining when there is jurisdiction in New Jersey in an occupational disease case. The three-part test that we adopt reflects in part the standard this Court adopted for determining when to apportion liability among successive insurers in such cases. We hold that, in this case, exposure for the relatively short period at issue cannot satisfy the injury requirement. The exposure was not to highly toxic materials known to cause disease even with minimal contact, *i.e.,* asbestos and polychlorinated biphenyls (PCBs). In other words, in order to invoke the jurisdiction of the Division in extraterritorial occupational disease cases based on the occurrence of injury in New Jersey, the petitioner must demonstrate either that (1) there was a period of work exposure in this State that was not insubstantial under the totality of circumstances and given the nature of the injury; (2) the period of exposure was not substantial but the materials were highly toxic; or (3) the disease for which compensation is sought was obvious or disclosed "by medical examination, work incapacity, or manifest loss of physical function," while working in New Jersey. *Bond, supra,* 42 *N.J.* at 311, 200 *A.*2d 322; *see Akef v. BASF Corp.,* 140 *N.J.* 408, 415, 658 *A.*2d 1252 (1995); *Giagnacovo v. Beggs Bros.,* 64 *N.J.* 32, 37–38, 311 *A.*2d 745 (1973). That test is consistent with the Act's requirement that a partial-permanent disability, whether caused by an accident or an occupational disease, must be "based upon demonstrable objective

medical evidence, which restricts the function of the body or of its members or organs," *N.J.S.A.* 34:15–36, or that the exposure was substantial enough to infer that injury occurred even in the absence of any manifestation of the disease.

We recognize the need for a more flexible standard for those occupational exposures that cause more seriously disabling diseases. When the occupational exposure in this State has been to highly toxic materials, chemicals or substances such as asbestos or PCBs, for jurisdictional purposes, injury will be presumed to have occurred beginning with the early exposure and continued throughout the exposure even though manifestation of a disease may not occur until the exposure had ended. When exposures are highly toxic, it is presumed that injury occurred even during the latency period. *See Owens–Illinois, Inc. v. United Ins. Co.,* 138 *N.J.* 437, 451–54, 650 *A.*2d 974 (1994). In those cases, it is not merely the exposure that permits the Division to exercise jurisdiction, but a combination of exposure and the early infliction of permanent injury. In that class of cases, this Court has recognized that

> "[t]he medical evidence is uncontroverted that 'bodily injury' in the form of tissue damage takes place at or shortly after the initial inhalation of asbestos fibers. . . ."
>
> [T]he courts which have endorsed the "exposure" theory in the asbestosis cases have not said that mere exposure to a substance is a "bodily injury." . . . Rather, those courts have concluded from medical testimony that the inhalation of asbestos causes immediate tissue damage, although the effects of that damage do not immediately manifest themselves . . . .
>
> [*Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co.,* 98 *N.J.* 18, 28, 483 *A.*2d 402 (1984) (quoting unpublished opinion of Skillman, J.S.C.) (quoting *Insurance Co. of N. Am. v. Forty–Eight Insulations,* 633 *F.*2d 1212, 1222 (6th Cir.1980), *certif. denied,* 454 *U.S.* 1109, 102 *S.Ct.* 686, 70 *L.Ed.*2d 650 (1981)).]

The three-part jurisdictional standard we have articulated is more analogous to the processing of occupational claims against the first employer in a chain of employers involving the same or similar work exposure over many years than to statute of limitations issues posed under *N.J.S.A.* 34:15–34. Here, petitioner can file a claim in New York where approximately 98.4% of his exposure occurred. Cases addressing statute of limitations issues

under *N.J.S.A.* 34:15–34 have reasoned that unless the claim can proceed in New Jersey, the petitioner would forever be foreclosed from having his or her claim heard. That rationale simply does not apply in extraterritorial-jurisdictional cases. We nevertheless adjure the Division in the first instance to apply the standard we adopt flexibly on a case-by-case basis bearing in mind the multiple combinations of exposure.

### B.

Applying the standard we adopt to the facts of this case leads us to conclude that the Division mistakenly exercised jurisdiction. The period of exposure in New Jersey was *de minimis* by any standard. Petitioner worked here for four months which was 1.6% of his total exposure. Based on that brief period of exposure in New Jersey, it cannot be said that such an exposure contributed, to a *material* degree, to the development of chronic bronchitis that was not diagnosed until twenty years after his New Jersey exposure had ended. In addition to that lack of medical examination, there was no manifest loss of physical function until many years after the work in New Jersey had ended. Just as there would be no apportionment of disability if petitioner had been performing the same work for a different employer during the same four months, *see Bond, Akef* and *Giagnacovo,* the Division should not have exercised jurisdiction simply because petitioner worked for the same employer the entire time.

Finally, even assuming that each of the four months of exposure in New Jersey cumulatively contributed to the twenty-percent pulmonary disability attributable to petitioner's total exposure of 252 months, proration based on the total exposure would mean that the four-month exposure caused less than a third of one percent of his disability. Clearly, that is the kind of nuisance or minor injury or disability the 1979 amendments to the Act were designed to preclude. *Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 111–15, 469 *A.*2d 22 (1984) (quoting Senate Labor, Indus. and Professions Comm., Joint Statement to Substitute for S.802 & A.840 at 1

(Nov. 13, 1979)). Further, petitioner was not exposed to the type of highly toxic materials to which we have adverted in developing the standard to be applied in these cases. Thus, any injury suffered by petitioner while working in New Jersey, "was so minor that [it] was not compensable." *Perez, supra,* 95 *N.J.* at 115, 469 *A.*2d 22.

## III.

The judgment of the Appellate Division is reversed. The matter is remanded to the Division to dismiss the claim petition. The Port Authority has agreed to waive any statute of limitations defense to petitioner filing a claim in New York within a reasonable time.

LONG, J., dissenting.

I would affirm substantially for the reasons expressed by the Appellate Division in the thorough and thoughtful opinion penned by Judge Pressler. *Williams v. Port Authority,* 345 *N.J.Super.* 549, 786 *A.*2d 114 (2001). In my view, that decision stands on well-settled legal principles governing jurisdiction.

## I.

It is not at all unusual for more than one state to have an interest in a single compensation claim or for there to be a marked difference in the benefits available under the statutes of different states. *Wilson v. Faull,* 27 *N.J.* 105, 116–17, 141 *A.*2d 768 (1958) (recognizing that variety of circumstances could operate to provide more than one state with interest in redress of work-connected injury and application by either forum of its compensation law); *see also* Lex K. Larson & Arthur Larson, *Workers' Compensation Law: Cases, Materials, and Text,* § 32.03 (3d ed.2000). So long as a state has more than a "casual" connection to the employment, it may apply its compensation law to the worker's claim. *Wenzel v. Zantop Air Transp., Inc.,* 94 *N.J.Super.* 326, 330–31, 228 *A.*2d 104 (Union County Ct.) (observing that, given liberal interpreta-

tion to coverage under workers' compensation statute and expanded jurisdictional concepts of due process, when more than casual employment services were performed in New Jersey, it is appropriate forum for compensation action), *aff'd o.b.*, 97 *N.J.Super.* 264, 235 *A.2d* 29 (App.Div.1967).

When an employee has a choice of forum, he or she is entitled to invoke the jurisdiction of the state providing "the highest available amount of compensation, ... consonant with the high-minded remedial purposes underlying compensation enactments." *Boyle v. G. & K. Trucking Co.*, 37 *N.J.* 104, 112, 179 *A.2d* 514 (1962). The state chosen need only be *one* appropriate forum, not the "only" one or even the "best" one. The sole inquiry is whether the state has more than a casual connection to the employment.

Among the considerations we traditionally have recognized as relevant in determining whether a state's interest is more than casual are those identified by Professor Larson as nearly universally accepted by our sister jurisdictions: the place of injury; the place of contract execution; the place where the employment relation is carried out; the place where the industry is localized; the place of the employee's residence; and the law of the place on which the parties agreed. 9 *Larson's Workers' Compensation Law* § 142.01 at 142–2 (2000), *cited with approval in Boyle, supra,* 37 *N.J.* at 109, 179 *A.2d* 514. Of those indicators, Larson has said, "As matters now stand, it is clear that the state which was the *locus* of any one of the first three items-contract, injury or employment-and probably also of the next two-employee residence and business localization-can constitutionally apply its statute if it wants to." *Ibid.*

Our case law essentially tracks the Larson principles:

Traditionally, an injury in New Jersey will trigger jurisdiction in the New Jersey compensation court. *Boyle*[, *supra,* 37 *N.J.* at 108, 179 *A.2d* 514]. So too where New Jersey is the place of the employment contract or hiring. *Gotkin v. Weinberg,* 2 *N.J.* 305, 307, 66 *A.2d* 438 (1949); *Rivera v. Green Giant Co.,* 93 *N.J.Super.* 6, 11, 224 *A.2d* 505 (App.Div.1966), *aff'd o.b.,* 50 *N.J.* 284, 234 *A.2d* 393 (1967). The employee's New Jersey residency appears, as well, to be sufficient, *Bunk v. Port Authority of New York and New Jersey,* 144 *N.J.* 176, 180–81, 676 *A.2d* 118 (1996), at least where there are also some employment contacts in New

Jersey, *Parks v. Johnson Motor Lines,* 156 *N.J.Super.* 177, 180–81, 383 *A.*2d 734 (App.Div.1978); *Beeny v. Teleconsult, Inc.,* [160 *N.J.Super.* 22, 27–28, 388 *A.*2d 1269 (App.Div.1978) ].

[*Connolly v. Port Auth.,* 317 *N.J.Super.* 315, 320, 722 *A.*2d 110 (App.Div.1998).]

*Connolly* went on to address Professor Larson's "industry localization" factor and held that, although that factor "is not sufficient *ipso facto* to establish jurisdiction," it "can be *one* of several considerations ...." *Id.* at 321, 722 *A.*2d 110 (emphasis added). Indeed, localization was specifically considered in *Phillips v. Oneida Motor Freight, Inc.,* 163 *N.J.Super.* 297, 303, 394 *A.*2d 891 (App.Div.1978), where Judge Conford, writing for the court, held that jurisdiction can be exercised even when the injury, the execution of the contract, and the residence of the employee are elsewhere if the "composite employment incidents present a[n] ... identification of the employment relationship with this State." *Ibid.* In *Phillips,* the employer's localization in New Jersey was one of the composite employment incidents justifying the exercise of jurisdiction. *Ibid.* That is the backdrop for our inquiry.

## II.

In light of those standards, it is clear that the Workers' Compensation judge and the Appellate Division correctly assessed New Jersey's interest in Williams's employment as more than casual. The Appellate Division began its analysis by noting that the Port Authority is a bi-state agency of New York and New Jersey. As such, it is at least in part "localized" here. *Lieberman v. Port Auth.,* 132 *N.J.* 76, 84, 622 *A.*2d 1295 (1993).

On the issue of place of injury, the Appellate Division stated:

Because it cannot be determined when during the period of exposure as a continuum, including the exposure on the bridge and at the New York airports, the pulmonary disease process commenced, we see no reason not to apply the rule we applied in *Peck [v. Newark Morning Ledger, Co.,*] 344 *N.J.Super.* 169, 781 *A.*2d 58 [ (App.Div.2001) ] ... namely that for all practical purposes, the commencement of a continuous period of exposure and the commencement of the disease process are simultaneous.

[*Williams, supra,* 345 *N.J.Super.* at 557, 786 *A.*2d 114.]

That principle is well established. *See Owens–Illinois, Inc. v. United Ins. Co.*, 138 *N.J.* 437, 451, 650 *A.*2d 974 (1994) (commenting that in environmental contamination insurance coverage cases, injury is considered as simultaneous with exposure); *Bond v. Rose Ribbon & Carbon Mfg. Co.*, 42 *N.J.* 308, 311, 200 *A.*2d 322 (1964) (holding liable employer or compensation insurance carrier during whose employment or coverage progressive occupational disease was disclosed when triggering or inception date of disease is unknown and undisclosed). The experienced Workers' Compensation judge and all the judges of the Appellate Division (including the dissenter) accepted the notion that, for practical reasons, the onset of progressive occupational disease and exposure must be considered "equatable." *Williams, supra,* 345 *N.J.Super.* at 557, 786 *A.*2d 114. Once that is accepted, it follows, as a matter of law, that at least some of Williams's injury occurred in New Jersey.

The Appellate Division elaborated on the point, noting that, as a matter of fact, the period of exposure was not "casual, brief or insubstantial":

> We are persuaded that petitioner's four-month exposure on a daily basis was sufficiently substantial to constitute an injury. During that time period, as he described his job, he was, on a daily basis and for eight hours each day, cleaning toll booths inside and out, "sweeping, degreasing with chemicals which cut the grease from the cement and also cleaning windows on the booths where people breeze through." He used the degreasing chemicals both in cleaning tollbooths and in "washing down the tiles in the tunnel where the bridge meets coming out." With respect to the tunnel tiles, he explained that "they have what they call a flush truck and you would get on the truck and you would wash the walls down with cleaning chemical and like a mop." He further explained that
>
> > Yeah, [I was] exposed to like smoke and stuff from the cars because you're inside this tunnel and they don't close the whole tunnel. They don't close down like one lane and you're dealing with the smoke and smog coming from the traffic and fumes from the traffic going back and forth out. And also there's accumulation from the smell. From the cleaning agent is a smoke, I mean a chemical that you will smell too. It is not, you know, very healthy.
>
> Certainly Port Authority recognized that the hazard was sufficient to require respirator masks although, according to petitioner, they were not provided on a daily basis. In our view this was not a casual, brief or insubstantial period of exposure.
>
> [*Id.* at 556–57, 786 *A.*2d 114.]

Moreover, the employment relationship between Port Authority and Williams was carried out, in part, in New Jersey. As the Workers' Compensation judge emphasized:

Whether subject matter or in personam, the Port Authority lost its jurisdiction argument when it assigned Mr. Williams to work in New Jersey. It is quite clear that had Mr. Williams sustained an accident while working in New Jersey, he could file a claim in New Jersey without objection by the respondent. He should also be able to file in New Jersey when his occupational exposure was, at least in part, incurred in New Jersey. This is especially so when it was the respondent alone who controlled and determined whether the petitioner would work in New Jersey. The respondent Port Authority put Mr. Williams in New Jersey as well as New York; by assigning the petitioner to work in New Jersey—four months of degreasing tunnels and toll lanes—the respondent itself created this significant purposeful contact with New Jersey. The Port Authority could have prevented this contact with New Jersey and could have ensured that any workers' compensation claim by Mr. Williams would be cognizable only in New York had it assigned Mr. Williams to jobs only in New York. It did not do so, and it is unseemly for the respondent Port Authority, who created the situation, to contend now that it is being unfairly or improperly brought into New Jersey to defend Mr. Williams's case.

In sum, the Port Authority, a bi-state agency with a major presence in New Jersey, purposefully assigned Williams to work here and in so doing exposed him to noxious substances. It was here that, as a matter of law, some of Williams's injury is deemed to have occurred. Plainly, the composite employment incidents reveal that New Jersey's interest is more than fleeting and casual.

Had New York been chosen as a forum by Williams, that state also would have been empowered to exercise jurisdiction over the claim based on service in that venue along with "localization" of the Port Authority and place of injury. In other words, Williams was presented with a choice between two jurisdictions, each of which had more than a casual interest in his claim. In exercising that choice, he was entitled to invoke the jurisdiction of the state whose laws would provide the highest available amount of compensation from his employer. In this case, that was New Jersey.

III.

The majority has set forth the requirement that:

> [I]n order to invoke the jurisdiction of the [Workers' Compensation] Division in extraterritorial occupational disease cases based on the occurrence of injury in New Jersey, the petitioner must demonstrate either that (1) there was a period of work exposure in this State that was not insubstantial under the totality of circumstances and given the nature of the injury; (2) the period of exposure was not substantial but the materials were highly toxic; or (3) the disease for which compensation is sought was obvious or disclosed "by medical examination, work incapacity, or manifest loss of physical function," while working in New Jersey.

*[Ante* at 90, 813 *A.*2d at 536.]

There are several problems with that articulation. First, it confuses jurisdictional principles with those underlying liability and apportionment. Indeed, that confusion is underscored by the authority the majority cites as supporting its standard. *Bond, supra,* 42 *N.J.* at 311, 200 *A.*2d 322 (establishing standard for apportioning compensation liability for occupational exposure disease between successive employments or insurance coverages); *Akef v. BASF Corp.,* 140 *N.J.* 408, 658 *A.*2d 1252 (1995) (determining which, among successive employers, was to be held liable for worker's occupational disease); *Giagnacovo v. Beggs Bros.,* 64 *N.J.* 32, 311 *A.*2d 745 (1978) (deciding whether exposure of petitioner during last period of employment, though short, contributed to his occupational disease). It may make sense to set forth detailed standards to determine liability and apportionment in an occupational disease case between sequential employers and insurers to assure parity between risk exposure and the actual payment of a compensation award. However, such details, and the trial that will be required to resolve them, have no place whatsoever in a jurisdictional analysis involving the question of which state will adjudicate a worker's claim against a single employer.

More importantly, the majority opinion effectively singles out one class of workers, those who by happenstance have been exposed to noxious substances both within and outside our borders, for a different jurisdictional burden than all other workers. There is simply no warrant for such a move. All workers' compensation cases should be subject to the same jurisdictional threshold and to the analysis by which we have classically abided.

As a judicial system, we have absolutely no interest that will be vindicated by closing our doors to workers like Williams.

For those reasons I dissent.

Justice ZAZZALI joins in this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA and ALBIN—5.

*For affirmance*—Justices LONG and ZAZZALI—2.